1.
2.
3.
4.
5.
6.
7.

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

8. VIKING BANK, a Washington state banking corporation

9.

                              Plaintiff,

10.        v.

11. PERFECT UNION, Official Number 510731, her engines, Machinery, Appurtenances, etc.,
12. *In Rem*;

13. and

14. JACK I. JOHNSON and JOAN G. SHELLEDY-JOHNSON, *In Personam*,

15.

                              Defendants.

16.

IN ADMIRALTY

Case No.

COMPLAINT TO FORECLOSE PREFERRED SHIP MORTGAGE *IN REM* AND *IN PERSONAM*

17.

Plaintiff Viking Bank, a Washington state banking corporation ("Bank") alleges:

18.

### I.

19.

This is an action to foreclose a ship mortgage, and a matter of admiralty and

20.

maritime jurisdiction under 46 U.S.C. § 31322 and § 31325 and within the meaning of

21.

Rule 9(h).

22.

### II.

23.

At all times material herein, defendant PERFECT UNION, Official Number

24.

510731, her engines, machinery, appurtenances, etc. ("Vessel") was duly documented

25.

26.

HOLMES WEDDLE & BARCOTT, PC
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA 98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

1. under the laws of the United States.  Said Vessel is now, or will be during the pendency

2. of process herein, within this District and within the jurisdiction of this Court.

3. **III.**

4. That on or about November 18, 1998, JACK I. JOHNSON and JOAN G.

5. SHELLEDY-JOHNSON ("Owners") executed and delivered to Bank, for valuable

6. consideration, a Promissory Note ("Note") in the principal sum of One Hundred and

7. Forty Thousand Five Hundred Seventy Five and 75/100 Dollars ($140,575.75).  The Note

8. is attached hereto as Exhibit 1.

9. **IV.**

10. That on or about November 18, 1998, Owners granted a Preferred Ship Mortgage

11. ("Mortgage") for One Hundred and Forty Thousand Five Hundred Seventy Five and

12. 75/100 Dollars ($140,575.75) to Bank to secure the Original Note.  The Preferred Ship

13. Mortgage is attached hereto as Exhibit 2.  The Mortgage was duly recorded at the

14. National Vessel Documentation Center against the Vessel on November 18, 1998, at

15. 10:27 AM, Book No. 98-110, Instrument No. 626, and in all respects qualifies as a

16. Preferred Mortgage under 46 U.S. § 31322 and § 31325.

17. **V.**

18. That on or about May 17, 2003, the parties executed a Change in Terms ("May

19. 2003 CIT") modifying the payment schedule of the Note.  The principal amount of the

20. May 2003 CIT was One Hundred and Twenty Seven Thousand One Hundred Twenty

21. One and 54/100 Dollars ($127,121.54).  The May 2003 CIT is attached hereto as

22. Exhibit 4.

23.

24.

25.

26.
COMPLAINT TO FORECLOSE PREFERRED SHIP
MORTGAGE *IN REM* AND *IN PERSONAM* - 2

HOLMES WEDDLE & BARCOTT, PC
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA 98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

**VI.**

That on or about November 18, 2003, the parties executed a Change in Terms ("November 2003 CIT") modifying the interest rate for the Note.  The November 2003 CIT is attached hereto as Exhibit 5.

**VII.**

That on or about November 28, 2004, the parties executed a Change in Terms ("November 2004 CIT") modifying the principal, payment schedule, and interest rate of the Note.  The principal amount of the November 2004 CIT was One Hundred and Twenty Six Thousand Seven Hundred Thirty Three and 00/100 Dollars ($126,733.00). The November 2004 CIT is attached hereto as Exhibit 6.

**VIII.**

That on or about December 18, 2004, the Mortgage was amended to an amount of One Hundred and Twenty Six Thousand, Seven Hundred Thirty Three Dollars ($126,733.00) ("Mortgage Amendment") to secure the Note as amended by the May 2003, November 2003, and November 2004 CITs.  The Mortgage Amendment is attached hereto as Exhibit 7.

**IX.**

That on or about April 18, 2005, the parties executed a Change in Terms ("April 2005 CIT") deferring three months of payments and adding real estate as collateral to secure the Note.  The principal amount of the April 2005 CIT was One Hundred and Twenty Five Thousand Nine Hundred Forty Three and 16/100 Dollars ($125,943.16). The April 2005 CIT is attached hereto as Exhibit 8.

**X.**

That on or about December 18, 2007, the parties executed a Change in Terms ("December 2007 CIT") extending the maturity date of the Note.  The principal amount of

COMPLAINT TO FORECLOSE PREFERRED SHIP
MORTGAGE *IN REM* AND *IN PERSONAM* - 3

HOLMES WEDDLE & BARCOTT, PC
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA 98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

1. the December 2007 CIT was One Hundred and Sixteen Thousand Four Hundred Eleven

2. and 32/100 Dollars ($116,411.32).  The December 2007 CIT is attached hereto as

3. Exhibit 9.

4.                                      **XI.**

5.          That on or about June 18, 2008, the parties executed a Change in Terms ("June

6. 2008 CIT') extending the maturity date of the Note.  The principal amount of the June

7. 2008 CIT was One Hundred and Thirteen Thousand Eight Hundred Forty Six and 36/100

8. Dollars ($113,846.36).  The June 2008 CIT is attached hereto as Exhibit 10.

9.                                      **XII.**

10.          That on or about September 18, 2008, the parties executed a Change in Terms

11. ("September 2008 CIT') extending the maturity date to September 28, 2009, amending

12. the payment schedule, and modifying the interest rate for the Note.  The principal amount

13. of the September 2008 CIT was One Hundred and Ten Thousand Nine Hundred Eleven

14. and 44/100 Dollars ($110,911.44).  The September 2008 CIT is attached hereto as

15. Exhibit 11.

16.                                      **XIII.**

17.          That on or about September 18, 2009, the parties executed a Change in Terms

18. ("September 2009 CIT') extending the maturity date to September 18, 2010.  The

19. principal amount of the September 2009 CIT was One Hundred and Five Thousand One

20. Hundred Forty Six and 62/100 Dollars ($105,146.62).  The September 2009 CIT is

21. attached hereto as Exhibit 12.

22.                                      **XIV.**

23.          Bank is the owner and holder of the Note and the Mortgage on the Vessel.

24.

25.

26.
COMPLAINT TO FORECLOSE PREFERRED SHIP
MORTGAGE *IN REM* AND *IN PERSONAM* - 4

HOLMES WEDDLE & BARCOTT, PC
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA  98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

**XV.**

Since about April 18, 2010, Owners have been in default under the terms of the Note and Mortgage. There is now due and owing to Bank under the Note principal of One Hundred Thousand Six Hundred Fifty Seven and 94/100 Dollars ($100,657.94) and interest due and owing as of June 9, 2010 of Two Thousand Five Hundred Forty Two and 34/100 Dollars ($2,542.34) and late fees of Two Hundred Ten and 00/100 Dollars ($210.00), subject to adjustment, together with interest accruing at the daily rate of $26.72 since June 9, 2010, plus costs and attorneys' fees.

**XVI.**

That the laws of the United States provide that, upon a default of any term of a preferred mortgage, the mortgage holder may enforce its claim for outstanding indebtedness against the mortgaged vessel, *in rem*, 46 U.S.C. § 31325.

**WHEREFORE**, Bank prays for judgment as follows:

1.    That this Court grant Bank judgment jointly and severally against the Vessel PERFECT UNION, Official Number 510731 *in rem* and JACK I. JOHNSON and JOAN G. SHELLEDY-JOHNSON *in personam* for:

     a.    The sum of $103,410.28, and interest at $26.72 per day from June 9, 2010;

     b.    Reasonable attorneys' fees as provided in the Note and Preferred Ship Mortgage; and

     c.    The costs of this action including charges for all fees for keepers and their costs incurred in this action and for all expenses for the sale of the Vessel, her engines, machinery, and appurtenances, etc.

2.    That Bank be adjudged the holder of a first Preferred Ship Mortgage on the Vessel for the payment of sums due, including costs and attorneys' fees, and that this

COMPLAINT TO FORECLOSE PREFERRED SHIP
MORTGAGE *IN REM* AND *IN PERSONAM* - 5

HOLMES WEDDLE & BARCOTT, PC
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA 98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

1. Court declare the lien of the said Mortgage to be superior to all other liens which may

2. exist against the Vessel.

3.     3.     That the Mortgage be foreclosed and the Vessel be sold by the U.S.

4. Marshal and the proceeds of the sale be applied and delivered to pay demands and claims

5. of Bank in the amount and to the extent as specifically set forth herein, together with

6. costs and attorneys' fees, and that it be declared that any and all persons, firms or

7. corporations claiming any interest in the Vessel are forever barred and foreclosed of and

8. from all rights of equity or redemption or claim in and to the Vessel.

9.     4.     That *in rem* process in due form of the law issue against the Vessel.

10.     5.     That at the sale of the Vessel by the U.S. Marshal, Bank be permitted to

11. bid, without cash deposit, its judgment, accrued interest, costs and attorneys' fees, up to

12. the full amount thereof.

13.     6.     That Bank have such other and further relief as in law and equity it may be

14. entitled to receive.

15.     DATED this ___23___ day of June, 2010.

16.                 HOLMES WEDDLE & BARCOTT

17.

18.                 _____

19.                 John E. Casperson, WSBA #14292
                    Attorneys for Plaintiff

20.

21.

22.

23.

24.

25.

26.

COMPLAINT TO FORECLOSE PREFERRED SHIP
MORTGAGE *IN REM* AND *IN PERSONAM* - 6

HOLMES WEDDLE & BARCOTT, PC
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA 98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

1. UNITED STATES OF AMERICA )
                                ) ss.
2. STATE OF WASHINGTON )

3.     Greg Swanson, being first duly sworn, upon oath deposes and states upon

4. information and belief:

5.     I am a Vice President for Viking Bank.  I have read the above and foregoing

6. complaint, know the contents thereof and believe the same to be true. I declare under

7. penalty of perjury under the laws of the United States of America that the foregoing is

8. true and correct.

9.

10. Date: 6/21/10                          _____
                                           Greg Swanson

11.

12.

13.

14.

15.

16.

17. G:\4151\25221\pleading\Complaint P15706_2110.doc

18.

19.

20.

21.

22.

23.

24.

25.

26.

COMPLAINT TO FORECLOSE PREFERRED SHIP
MORTGAGE *IN REM* AND *IN PERSONAM* - 7

HOLMES WEDDLE & BARCOTT, PC
999 THIRD AVENUE, SUITE 2600
SEATTLE, WA 98104-4011
TELEPHONE (206) 292-8008
FAX (206) 340-0289

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $140,575.75 | 11-18-1998 | 11-18-2003 | 1018017028 | | PMM | 104024 | 206 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** Jack I. Johnson (SSN: 533–42–3684)
Joan G. Shelledy–Johnson (SSN: 537–30–2395)
2900 Westlake Avenue North #B6
Seattle, WA 98109

**Lender:** VIKING COMMUNITY BANK
BALLARD BRANCH
2237 NW 57TH STREET
P.O. BOX 70546
SEATTLE, WA 98107

---

**Principal Amount: $140,575.75**     **Interest Rate: 8.875%**     **Date of Note: November 18, 1998**

**PROMISE TO PAY.** I promise to pay to VIKING COMMUNITY BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Forty Thousand Five Hundred Seventy Five & 75/100 Dollars ($140,575.75), together with interest at the rate of 8.875% per annum on the unpaid principal balance from November 18, 1998, until paid in full.

**PAYMENT.** I will pay this loan in 59 regular payments of $1,253.92 each and one irregular last payment estimated at $125,755.04. My first payment is due December 18, 1998, and all subsequent payments are due on the same day of each month after that. My final payment due November 18, 2003, will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, I understand that Lender is entitled to a minimum interest charge of $15.00. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, they will reduce the principal balance due and may result in me making fewer payments.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the regularly scheduled payment or $15.00, whichever is greater.

**DEFAULT.** I will be in default if any of the following happens: (a) I fail to make any payment when due. (b) I break any promise I have made to Lender, or I fail to comply with or to perform when due any other term, obligation, covenant, or condition contained in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender. (c) Any representation or statement made or furnished to Lender by me or on my behalf is false or misleading in any material respect either now or at the time made or furnished. (d) I die or become insolvent, a receiver is appointed for any part of my property, I make an assignment for the benefit of creditors, or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws. (e) Any creditor tries to take any of my property on or in which Lender has a lien or security interest. This includes a garnishment of any of my accounts with Lender. (f) Any of the events described in this default section occurs with respect to any guarantor of this Note. (g) (h) Lender in good faith deems itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then I will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, increase the interest rate on this Note to 24.000% per annum. The interest rate will not exceed the maximum rate permitted by applicable law. Lender may hire or pay someone else to help collect this Note if I do not pay. I also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law. This Note has been delivered to Lender and accepted by Lender in the State of Washington. If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of KING County, the State of Washington. This Note shall be governed by and construed in accordance with the laws of the State of Washington.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $18.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** I grant to Lender a contractual security interest in, and hereby assign, convey, deliver, pledge, and transfer to Lender all my right, title and interest in and to, my accounts with Lender (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts I may open in the future, excluding however all IRA and Keogh accounts, and all trust accounts for which the grant of a security interest would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on this Note against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided on this paragraph.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan, or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

## WARNING

**UNLESS I PROVIDE LENDER WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY THIS AGREEMENT, LENDER MAY PURCHASE INSURANCE AT MY EXPENSE TO PROTECT LENDER'S INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT MY INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE LENDER PURCHASES MAY NOT PAY ANY CLAIM I MAKE OR ANY CLAIM MADE AGAINST ME. I MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT I HAVE OBTAINED PROPER COVERAGE ELSEWHERE.**

**I AM RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY LENDER. THE COST OF THIS INSURANCE MAY BE ADDED TO MY LOAN BALANCE. IF THE COST IS ADDED TO THE LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE MY PRIOR COVERAGE LAPSED OR THE DATE I FAILED TO PROVIDE PROOF OF COVERAGE.**

**THE COVERAGE LENDER PURCHASES MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE I CAN OBTAIN ON MY OWN AND MAY NOT SATISFY WASHINGTON'S MANDATORY LIABILITY INSURANCE LAWS.**

PRIOR TO SIGNING THIS NOTE, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I, AND EACH OF US, AGREE TO THE TERMS OF THE NOTE AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THE NOTE.

**BORROWER:**

x _____
Jack I. Johnson

x _____
Joan G. Shelledy–Johnson

---

Fixed Rate. Balloon.          LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.26 (c) 1998 CFI ProServices, Inc. All rights reserved. [WA–D20 017028.LN G2.OVL]

Exhibit 1, p. 1 of 4

# CONSUMER SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $140,575.75 | 11-18-1998 | 11-18-2003 | 1018017028 | | PMM | 104024 | 206 | |
| References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. | | | | | | | | |

**Borrower:**  Jack I. Johnson (SSN: 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)       **Lender:** VIKING COMMUNITY BANK
          Joan G. Shelledy–Johnson (SSN: 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)          BALLARD BRANCH
          2900 Westlake Avenue North #B6          2237 NW 57TH STREET
          Seattle, WA 98109          P.O. BOX 70546
                                                                      SEATTLE, WA 98107

**THIS CONSUMER SECURITY AGREEMENT** is entered into between Jack I. Johnson and Joan G. Shelledy–Johnson (referred to below as "I"); and VIKING COMMUNITY BANK (referred to below as "Lender").

**GRANT OF SECURITY INTEREST.** To secure the Indebtedness described below (including all obligations under the Note and this Agreement), I grant to Lender a security interest in all of the Property described below. I understand that the following statements set forth my responsibilities, as well as Lender's rights, concerning the Property. I agree as follows:

**DEFINITIONS.** When the following words are used in this Agreement, I understand they will have the following meanings:

     **Agreement.** The word "Agreement" means this Consumer Security Agreement, as this Consumer Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Consumer Security Agreement from time to time.

     **I.** The word "I" means each person who signs this Agreement, including Jack I. Johnson and Joan G. Shelledy–Johnson.

     **Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note described below, including all principal and interest, together with all other amounts and costs and expenses for which I am responsible under this Agreement or under any other agreement with Lender pertaining to the loan.

     **Lender.** The word "Lender" means VIKING COMMUNITY BANK, its successors and assigns. The words "successors or assigns" mean any person or company which acquires all or any part of Lender's interest in the Note.

     **Note.** The word "Note" means the promissory note or credit agreement executed by me in the principal amount of $140,575.75 dated November 18, 1998, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

     **Property.** The word "Property" means the following described property in which I am giving Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

     **1976 53' Pacemaker Motoryacht "Perfect Union", Official Number 510731**

     The word "Property" also includes all accessions, attachments, accessories, replacements and additions to the property described above (such as tires or batteries attached to a car, a motor attached to a boat, or appliances and fixtures attached to a mobile home), whether added now or later, together with all proceeds (including insurance proceeds and refunds of insurance premiums) if any, and sums due from a third party who has damaged or destroyed the Property or from their insurer, whether due to judgment, settlement or other process. Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, if because of the type of any Property, Lender is required to give a notice of the right to cancel under Truth in Lending for the Indebtedness, then Lender will not have a security interest in such Property unless and until such a notice is given.

**RIGHT OF SETOFF.** I grant to Lender a contractual security interest in, and hereby assign, convey, deliver, pledge and transfer to Lender, all my right, title and interest in and to all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which the grant of a security interest would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph .

**REPRESENTATIONS AND PROMISES WITH RESPECT TO THE PROPERTY.** I represent and promise to Lender that:

     **Ownership.** I am the lawful owner of the Property. The Property is free and clear of all loans, liens, security interests, mortgages, claims, and encumbrances except for those I have disclosed to Lender in writing prior to my signing this Agreement. I agree to defend Lender's rights in the Property against the claims and demands of all persons. I will not allow any other liens on the Property, even if they are junior to Lender's lien. I have the full authority and right to enter into this Agreement and to grant a security interest in the Property to Lender.

     **No Sale.** Without Lender's prior written consent, I will not sell, lease, transfer, borrow against, or otherwise dispose of any of my rights in the Property unless and until all the Indebtedness is paid in full.

     **Location of Property.** I agree to keep the Property at my address shown above, unless Lender tells me I can move it. If I move from my address shown above to another location within the same state, I may move the Property to my new address, but only if I give Lender the new address in writing prior to my moving. In any event, I agree to keep Lender informed at all times of my current address.

     **Maintenance and Insurance.** I will keep the Property in good condition and repair. If the Property is damaged, lost or stolen, I immediately will inform Lender. I will keep the Property fully insured against all loss or damage by fire, theft, collision, and such other hazards as Lender may require from time to time. The insurance will be on terms, including deductible provisions and endorsements, that are satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such notice. I understand I may obtain insurance from any insurance company I may choose that is reasonably acceptable to Lender. I will provide Lender with the original insurance policy, or other proof satisfactory to Lender of the insurance coverage, together with all endorsements required by Lender, including an endorsement naming Lender as the party to whom all losses will be paid. If Lender receives a refund of any insurance premiums, I agree that the refund is Property covered by this Agreement. Lender may apply the refund to payment of any of the Indebtedness. Any insurance policy which I deliver to Lender will be held to secure payment of the Indebtedness. Until all Indebtedness is paid in full, Lender is authorized, but shall not be required, to file any proof of loss, adjust any loss, receive and receipt for any sum payable, surrender any policy, discharge and release any insurer, endorse any loss or refund check or draft, and in general do in my name, or otherwise, any and all things with respect to the insurance or any insurance proceeds.

     **Licensing and Governmental Regulations.** I agree to keep the Property licensed at all times as required by all applicable state and federal laws. In addition, I agree to pay when due all license fees, taxes and assessments relating to the Property or the use of the Property. I further agree that the Property will not be used for any unlawful purpose or in violation of any statute, law, ordinance, or regulation relating to the use, operation, or control of the Property.

     **Right to Inspect the Property.** I authorize Lender to inspect or examine the Property, wherever located, at any reasonable time, and I will aid Lender in making any such inspection.

**LENDER'S EXPENDITURES.** If I fail (a) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims; (b) to provide required insurance; or (c) to make repairs to the Property, Lender may do so. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by me. All such expenses will become a part of the Indebtedness and, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Note, or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. The Property also will secure payment of these amounts.

**DEFAULT.** I will be in default if any of the following happens: **(a) Payment Default.** I fail to make any payment when due on the Indebtedness. **(b) Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any other agreement or loan with Lender. **(c) False Statements.** Any representation or statement made by me to Lender is false in any material respect. **(d) Death or Insolvency.** I die or become insolvent, a receiver is appointed for any part of my property, I make an assignment for the benefit of creditors, or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws. **(e) Taking of The Property.** Any creditor or governmental agency tries to take any of the Property. This includes the taking or garnishment of any of my accounts with Lender. **(f) Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against. **(g) Guarantors.** Any of the events described above in this default section happen to any guarantor of any of the Indebtedness. **(h) Lender's Insecurity.** Lender in good faith deems itself insecure.

**LENDER'S RIGHTS.** I may keep and use the Property so long as I am not in default under this Agreement. If I am in default, this is what Lender may do, in addition to any other rights Lender may have: **(a) Accelerate Indebtedness.** Lender may, subject to any cure and notice provisions

Exhibit 1  p. 2 of 4

11-18-1998
Loan No 1018017028

# CONSUMER SECURITY AGREEMENT
(Continued)

Page 2

required by law, declare all indebtedness immediately due and payable, without notice. **(b) Other Rights and Remedies.** In addition, Lender will have all the rights of a secured party under the Uniform Commercial Code and other applicable law. This means, among other rights, that Lender may enter upon the premises at the address shown above and take the Property peaceably and sell it. Lender may also, to the extent permitted by law, enter peaceably upon other premises for the purpose of retaking the Property, and I consent to such entry. If the Property contains any goods not covered by this Agreement at the time of repossession, I agree that Lender may take such goods, provided that Lender makes reasonable efforts to return them to me after repossession. If Lender asks me to do so, I will gather the Property and make it available to Lender at a place reasonably convenient to both Lender and me. **(c) Application of Proceeds.** If Lender sells the Property, Lender will apply the "net proceeds" of the sale to reduce the amount owed Lender. "Net proceeds" means the sale price less the expenses of repossession, repair, sale, and as provided below, attorneys' fees and other collection expenses. I agree that, to the extent permitted by law, I will owe Lender any difference between the amount of the indebtedness and the net proceeds Lender receives from the sale of the Property. Lender may hold all Property consisting of accounts with Lender, and Lender may, without notice or demand of any kind, apply the funds in these accounts to pay all or part of the indebtedness. **(d) Notice.** Unless the Property threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give me reasonable notice of the time and place of any public sale or of the date after which any private sale or any other intended disposition of the Property is to be made. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments and Interpretation.** (a) What is written in this Agreement is my entire agreement with Lender concerning the Property. This Agreement may not be changed except by another written agreement between us. (b) If more than one person signs below, our obligations are joint and several. This means that the words "I," "me," and "my" mean each and every person or entity signing this Agreement, and that, if Lender brings a lawsuit, Lender may sue any one or more of us. (c) The names given to paragraphs or sections in this Agreement are for convenience purposes only. They are not to be used to interpret or define the provisions of this Agreement. (d) I agree that this Agreement is the best evidence of my agreements with Lender. If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Applicable Law.** This Agreement has been delivered to Lender and accepted by Lender in the State of Washington. If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of KING County, the State of Washington. This Agreement shall be governed by and construed in accordance with the laws of the State of Washington.

**Attorneys' Fees and Other Costs.** If Lender hires or pays money to someone else to help enforce this Agreement or to collect any indebtedness, I will pay that amount. This amount includes Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. I will also pay any court costs, in addition to all other sums provided by law. This Agreement also secures all of these amounts.

**Financing Statements.** At Lender's request, I will promptly sign all other documents, such as financing statements and certificates of title, to perfect, protect, and continue Lender's security interest in the Property. This includes making sure Lender is shown as the first and only security interest holder on the title covering the Property. I will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. I irrevocably appoint Lender as my attorney-in-fact to execute financing statements and documents of title in my name and to execute all documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If I change my name or obtain a new Social Security Number, or if the name or Social Security Number of any person granting a security interest under this Agreement changes, I will promptly notify the Lender of such change.

**Notices.** I understand that all notices when required to be given under this Agreement, whether from Lender to me or from me to Lender, must be given in writing. Notices may be sent by telefacsimile (unless otherwise required by law), and will not be effective until actually delivered, or when deposited with a nationally recognized overnight courier or when deposited in the United States mail, first class, postage prepaid, addressed to the party to whom the notice is to be given at the address shown above. Any person may change his or her address for notices under this Agreement by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. I agree that, to the extent permitted by law, if there is more than one person signing this Agreement, Lender may give notice to any one of us and that will be considered as giving notice to all of us unless the law requires notice to all signers. It will be our responsibility to tell the others of the notice from Lender. For this purpose, I agree to keep Lender informed at all times of my current address.

**Preference Payments.** Any monies Lender pays because of an asserted preference claim in my bankruptcy will become a part of the indebtedness and, at Lender's option, shall be payable by me as provided above in the "LENDER'S EXPENDITURES" paragraph.

**Waiver.** I understand Lender will not give up any of its rights under this Agreement unless it does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of its rights, that does not mean I will not have to comply with the other provisions of this Agreement. I also understand that if Lender does consent to a request, that does not mean that I will not have to get Lender's consent again if the situation happens again. I further understand that just because Lender consents to one or more of my requests, that does not mean Lender will be required to consent to any of my future requests. I waive presentment, demand for payment, protest, and notice of dishonor.

**Waiver of Co-obligor's Rights.** If more than one person is obligated for the indebtedness, I irrevocably waive, disclaim and relinquish all claims against such other person which I have or would otherwise have by virtue of payment of the indebtedness or any part thereof, specifically including but not limited to all rights of indemnity, contribution or exoneration.

## WARNING

**UNLESS I PROVIDE LENDER WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY THIS AGREEMENT, LENDER MAY PURCHASE INSURANCE AT MY EXPENSE TO PROTECT LENDER'S INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT MY INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE LENDER PURCHASES MAY NOT PAY ANY CLAIM I MAKE OR ANY CLAIM MADE AGAINST ME. I MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT I HAVE OBTAINED PROPER COVERAGE ELSEWHERE.**

**I AM RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY LENDER. THE COST OF THIS INSURANCE MAY BE ADDED TO MY LOAN BALANCE. IF THE COST IS ADDED TO THE LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE MY PRIOR COVERAGE LAPSED OR THE DATE I FAILED TO PROVIDE PROOF OF COVERAGE.**

**THE COVERAGE LENDER PURCHASES MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE I CAN OBTAIN ON MY OWN AND MAY NOT SATISFY WASHINGTON'S MANDATORY LIABILITY INSURANCE LAWS.**

**I, AND EACH OF US, HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS CONSUMER SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED NOVEMBER 18, 1998.**

GRANTOR:

X _____        _____
Jack I. Johnson                  Joan G. Shelledy-Johnson

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.26 (c) 1998 CFI ProServices, Inc. All rights reserved. [WA-E30 017028.LN G2.OVL]

Exhibit _1_ p. _3_ of _4_

# DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|-----------|-----------|----------|---------|------|------------|---------|---------|----------|
| $140,575.75 | 11-18-1998 | 11-18-2003 | 1018017028 | | PMM | 104024 | 206 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** Jack I. Johnson (SSN: 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)
Joan G. Shelledy-Johnson (SSN: 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)
2900 Westlake Avenue North #B6
Seattle, WA 98109

**Lender:** VIKING COMMUNITY BANK
BALLARD BRANCH
2237 NW 57TH STREET
P.O. BOX 70546
SEATTLE, WA 98107

| **ANNUAL PERCENTAGE RATE** The cost of my credit as a yearly rate. | **FINANCE CHARGE** The dollar amount the credit will cost me. | **Amount Financed** The amount of credit provided to me or on my behalf. | **Total of Payments** The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 9.160% | $60,663.57 | $139,072.75 | $199,736.32 |

**PAYMENT SCHEDULE.** My payment schedule will be 59 monthly payments of $1,253.92 each, beginning December 18, 1998, and one last payment of $125,755.04 on November 18, 2003.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in the goods or property being purchased in addition to Lender's security interest and other rights in my deposit accounts.

**LATE CHARGE.** If a payment is 10 days late, I will be charged 5.000% of the payment or $15.00, whichever is greater.

**PREPAYMENT.** If I pay off early, I will not be entitled to a refund of the prepaid finance charges, and I may have to pay a minimum finance charge.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

I read and was given a completed copy of this Disclosure Statement on November 18, 1998, prior to signing the Note.

**BORROWER:**

Jack I. Johnson                    x _Joan G. Shelledy-Johnson_

## Amount Financed Itemization

| | |
|---|---|
| Amount paid to others on my behalf: $139,000.00 to Marine Title Company | $139,000.00 |
| Other Charges Financed: $12.75 Title Release Fee $12.00 UCC-1 Financing Statement $48.00 UCC-11R Search Fee | $72.75 |
| **Total Financed Prepaid Finance Charges:** | $1,503.00 |
| Note Principal: | $140,575.75 |
| Prepaid Finance Charges: | $1,503.00 |
| Financed:     $1,503.00 $1,390.00  Loan Fees $8.00  Credit Report $105.00  Documentation Preparation Fee | |
| **Amount Financed:** | $139,072.75 |

Fixed Rate. Balloon.    LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.26 (c) 1998 CFI ProServices, Inc. All rights reserved. [WA-B10 017028.LN G2.OVL]

Exhibit 1, p. 4 of 4

## PREFERRED MORTGAGE OF VESSEL

From: Jack I. Johnson and Joan Shelledy-Johnson (Mortgagor)

To: Viking Community Bank (Mortgagee)

To all to whom these Presents shall come, Greeting:

Know ye, That Jack I. Johnson and Joan Shelledy-Johnson, Joint Tenants With Right of Survivorship, of 2900 Westlake Avenue N., #B6, Seattle, Washington 98109, 100% owners of the self-propelled vessel called the PERFECT UNION of Seattle, Washington, Official Number 510731 of the burden of 47 gross tons and 37 net tons, or thereabouts, of the first part, being justly indebted to Viking Community Bank of 2237 NW 57th, Seattle, Washington 98107, a citizen of the United States, 100% mortgagee, of the second part, in the sum of One Hundred Forty Thousand Five Hundred Seventy Five and 75/100 ($140,575.75) dollars upon the terms of a certain promissory note, a copy of which is attached to this document, together with any and all extensions and renewals, have, for the purpose of securing the payment of the said debt, and the interest thereon, granted, bargained, sold, and mortgaged and by these presents do grant, bargain, sell, and mortgage unto the said party of the second part, its successors and assigns, the whole of said vessel, together with all of the mast, bowsprit, boat, anchors, cables, chains, rigging, tackle, apparel, furniture, and all other necessaries thereunto appertaining and belonging.

To have and to hold the said vessel and all the other before mentioned appurtenances unto it, the said Viking Community Bank and to its executors, administrators, successors and assigns, to the sole and only proper use, benefit, and behoof of it, the said Viking Community Bank and to its executors, administrators, successors and assigns, forever:

Provided always, and the condition of these presents is such, that if the said parties of the first part, their heirs, executors or administrators, shall pay or cause to be paid, to the said party of the second part, its successors or assigns, the debt aforesaid, with the interest thereon, at the time or times and in the manner in accordance with the terms of a certain promissory note, a copy of which is attached to this document, together with any and all renewals or extensions, then these presents shall be void and of no effect, subject, however, to the provisions hereinafter contained; and the said parties of the first part hereby agree to pay the debt aforesaid, and interest thereon, and to fulfill and perform each and every one of the covenants and conditions herein contained.

But if default be made in such payments, or in any one of such payments, or if default be made in the prompt and faithful performance of any of the covenants herein contained, or if the said party of the second part shall at any time deem itself in danger of losing said debt, or any part thereof, by delaying the collection thereof until the expiration of the time limited for the payment thereof, or if said parties of the first part shall sell or attempt to sell said property, or any part thereof, or if the same shall be levied upon or taken by virtue of any attachment or execution against said first parties, or if said first parties shall remove, or attempt to remove, said vessel beyond the limits of the United States, or if said first parties shall suffer and permit said vessel to be run in debt or if said first parties shall negligently or willfully permit said property to waste, or be damaged or destroyed, said party of the second part is hereby authorized to take possession of said goods, chattels, and personal property at any time, wherever found, either before or after the expiration of the time aforesaid, and to sell and convey the same, or so much thereof as may be necessary to satisfy the said debt, interest, and reasonable expenses, after first giving a notice of a legal number of days, as may be required by applicable statutes or ordered by a court of proper jurisdiction, and to retain the same out of the proceeds of such sale; the surplus (if any) to belong and to be returned to said parties of the first part.

And it is agreed that on such sale the party of the second part, its successors or assigns, may become the purchasers.

And the said parties of the first part do further covenant and agree, to and with the said party of the second part, its successors and assigns, that they will immediately procure said vessel to be insured against loss or damage by fire, and against all marine risks and disasters, in some good and responsible insurance company or companies, to be selected and approved by the said party of the second part, for an amount at least equal to the amount which shall from time to time remain unpaid upon the said indebtedness and interest thereon, and that they will keep such policy or policies renewed from time to time, and keep the same valid at all times for the amount aforesaid; that they will do, suffer, or permit to be done, no act whereby said insurance would be liable to be vitiated or forfeited, and that they will immediately assign and deliver to said second party said policy or policies of insurance, having first duly obtained the proper consent of the insurance company or companies to such assignment, and that they will also promptly deliver to said second party the renewal certificates of said policies as a collateral security for the payment of said indebtedness. And if said first parties shall fail to immediately procure, assign, and deliver such policy or policies as aforesaid, or shall at any time fail to immediately renew the same, and deliver the renewal certificates as aforesaid, the said party of the second part, its successors or assigns, is hereby authorized to procure said vessel to be insured as aforesaid, and to keep the policy or policies renewed; and the amount which it has to pay therefore shall be considered, and is hereby declared to be, an additional indebtedness hereby intended to be secured, and shall be repaid to said party of the second part, its successors or assigns, on demand, and shall bear interest at the rate so stated in the terms of a certain promissory note, a copy of which is attached to this document, together with any and all renewals or extensions, from the time of such payment until repaid.

And it is hereby provided, that it shall be lawful for said first parties, their heirs, executors and administrators, to retain possession of the property hereby mortgaged, and at their own expense to use and enjoy the same until said indebtedness shall become due, unless said second party should at any earlier date declare this mortgage forfeited for nonperformance of any of the covenants herein contained, or by virtue of any authority hereby conferred on said second party.

In testimony whereof, we, the said Jack I. Johnson and Joan Shelledy-Johnson as Joint Tenants With Right of Survivorship, hereunto set our hands this *18* day of *NOVEMBER*, 1998.

_____
Jack I. Johnson

_____
Joan Shelledy-Johnson

### ACKNOWLEDGEMENT

State of _Washington_
County of _King_

    Be it known, that before me appeared Jack I. Johnson and Joan Shelledy-Johnson to me known to be the individuals described in and who executed this instrument and acknowledged that they signed the same as their free and voluntary act and deed for the uses and purposes therein mentioned.

    In testimony thereof, I have hereunto set my hand and seal this *18th* day of *Nov.*, 1998.

NOTARY PUBLIC
STATE OF WASHINGTON
CALLIE PLANTE
My appointment Expires Sept 1, 1999

Notary Public in and for the State of _WA_
residing at _Seattle_ My commission expires _9-1-99_

### AFFIDAVIT OF GOOD FAITH

State of _Washington_
County of _King_

    We, Jack I. Johnson and Joan Shelledy-Johnson of Seattle, Washington, being first duly sworn, on oath depose and say: That the within mortgage is made in good faith and without any design to hinder, delay or defraud any existing or future creditor of the mortgage or any lien or of the mortgaged vessel.

_____
Jack I. Johnson

_____
Joan Shelledy-Johnson

Subscribed and sworn to before me this *18th* day of *Nov.*, 1998.

NOTARY PUBLIC
STATE OF WASHINGTON
CALLIE PLANTE
My appointment Expires Sept 1, 1999

Notary Public in and for the State of _WA_  _9-1-99_
residing at _Seattle_ My commission expires

### PRIOR AND SUBSEQUENT LIENS AFFIDAVIT

State of _Washington_
County of _King_

    We, the undersigned, in pursuance of the provisions of the Ship Mortgage Act, 1920, do hereby certify that at the time of executing a certain preferred marine mortgage on the PERFECT UNION, Official Number 510731 of Seattle, Washington, in favor of Viking Community Bank, that there is no maritime lien, prior mortgage or other obligation of liability upon said vessel known to the undersigned mortgagor except: None.

    It is further certified that without the consent of the mortgagee under the above-mentioned mortgage, there will not be incurred after the execution of that mortgage, and before the mortgagee has had a reasonable time in which to record same and have the endorsement in respect thereto made upon the document of the said vessel, any contractual obligation creating a lien upon the vessel other than lien for wages for stevedores employed directly by the owner-master, or agent of the vessel, wages of the crew of the vessel, general average salvage, including contract salvage, in respect to said vessel.

_____
Jack I. Johnson

_____
Joan Shelledy-Johnson

Subscribed and sworn to before me this *18th* day of *November*, 1998.

NOTARY PUBLIC
STATE OF WASHINGTON
CALLIE PLANTE
My appointment Expires Sept 1, 1999

Notary Public in and for the State of _WA_  _9-1-99_
Residing at _Seattle_ My commission expires

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $127,121.54 | 05-17-2003 | 11-18-2003 | 1018017028 | 2600 | 0000104024-01 | 206 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** JACK I JOHNSON
JOAN G SHELLEDY–JOHNSON
6801 BAYVIEW DR NW
MARYSVILLE, WA 98271

**Lender:** Viking Bank
registered trade name of Viking Community Bank
2237 Northwest 57th Street
P.O. Box 70546
Seattle, WA 98107

---

**Principal Amount: $127,121.54**                          **Date of Agreement: May 17, 2003**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** That certain Promissory Note dated November 18, 1998, from Borrower to Lender in the original principal amount of $140,575.75.

**DESCRIPTION OF COLLATERAL.** Preferred Marine Mortgage dated November 18, 1998, recorded in book 98–110, page 626 on November 2, 1998 for "Perfect Union", Official Number 510731 and  Commercial Security Agreement dated November 18, 1998 from Borrower to Lender, and further evidenced by that UCC–1 Financing Statement recorded in the records of the Secretary of State of Washington on November 20, 1998 as File Number 98–324–0457.

**DESCRIPTION OF CHANGE IN TERMS.** The payment schedule is hereby amended as further described below in paragraph titled "PAYMENT". All other terms and conditions remain unchanged.

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to Viking Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Twenty–seven Thousand One Hundred Twenty–one & 54/100 Dollars ($127,121.54), together with interest on the unpaid principal balance from May 17, 2003, until paid in full.

**PAYMENT.** I will pay this loan in accordance with the following payment schedule:  6 monthly consecutive interest payments, beginning May 18, 2003, with interest calculated on the unpaid principal balances at an interest rate of 8.875% per annum; and one principal and interest payment of $127,121.54 on November 18, 2003, with interest calculated on the unpaid principal balances at an interest rate of 0.000% per annum.  This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Agreement. Interest on this Agreement is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  In any event, even upon full prepayment of this Agreement, I understand that Lender is entitled to a **minimum interest charge of $15.00**. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due and may result in my making fewer payments.  I agree not to send Lender payments marked "paid in full", "without recourse", or similar language.  If I send such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and I will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  Viking Bank, registered trade name of Viking Community Bank, 2237 Northwest 57th Street, P.O. Box 70546, Seattle, WA  98107.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Agreement to 24.000% per annum.  The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** I will be in default under this Agreement if any of the following happen:

**Payment Default.** I fail to make any payment when due under the Indebtedness.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.  In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Agreement and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if I do not pay.  I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.  If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER. Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.**

**GOVERNING LAW. This Agreement will be governed by and interpreted in accordance with federal law and the laws of the State of Washington. This Agreement has been accepted by Lender in the State of Washington.**

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $50.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account).  This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** I acknowledge this Agreement is secured by Preferred Marine Mortgage in the name of: "Perfect Union", Official Number 510731.

Loan No: 1018017028

**CHANGE IN TERMS AGREEMENT**
**(Continued)**

Page 2

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ERRORS AND OMISSIONS.** In the event any of the documents evidencing and/or securing the Loan misstate or inaccurately reflect the true and correct terms and provisions of the Loan and said misstatement or inaccuracy is due to the unilateral mistake on the part of the Lender, mutual mistake on the part of Lender and Borrower, or clerical error or any such documents need additional signatures by Borrower, or additional documents are needed to confirm or perfect Lender's rights or Borrower's obligations, then in such event Borrower shall immediately upon request by Lender execute such documents or initial such corrected original documents as Lender may deem necessary and Borrower's failure to initial or execute such documents as requested shall constitute a Default under the Loan evidencing the Deed of trust and/or Security Agreement securing the Loan.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than me, Lender, without notice to me, may deal with my successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing me from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Viking Bank, registered trade name of Viking Community Bank, 2237 Northwest 57th Street, P.O. Box 70546, Seattle, WA 98107

**MISCELLANEOUS PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. I and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**PRIOR TO SIGNING THIS AGREEMENT, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT AND THE NOTICE TO COSIGNER SET FORTH BELOW. I, AND EACH OF US, AGREE TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

X _____
JACK I JOHNSON, Individually

X _____
JOAN G SHELLEDY-JOHNSON, Individually

---

### NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Lender can collect this debt from you without first trying to collect from the borrower. The Lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

This notice is not the contract that makes you liable for the debt.

LASER PRO Lending, Ver. 5.21.70.002 Copr. Harland Financial Solutions, Inc. 1997, 2003. All Rights Reserved. - WA C:\APPS\HARLAND\CFI\LPL\D20C.FC TR-124 PR-CONSMULT

Exhibit 1, p. 2 of 4

## DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $127,121.54 | 05-17-2003 | 11-18-2003 | 1018017028 | 2600 | 0000104024-02 | 206 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**
JACK I JOHNSON
JOAN G SHELLEDY–JOHNSON
6801 BAYVIEW DR NW
MARYSVILLE, WA 98271

**Lender:**
Viking Bank
registered trade name of Viking Community Bank
2237 Northwest 57th Street
P.O. Box 70546
Seattle, WA 98107

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 7.636% | $4,863.09 | $127,018.54 | $131,881.63 |

**PAYMENT SCHEDULE.** Borrower's payment schedule will be one interest payment of $30.91 on May 18, 2003; one interest payment of $958.20 on June 18, 2003; one interest payment of $927.29 on July 18, 2003; one interest payment of $958.20 on August 18, 2003; one interest payment of $927.29 on September 18, 2003; one interest payment of $927.29 on October 18, 2003; and one principal and interest payment of $127,121.54 on November 18, 2003.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in my motoryacht. In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**PREPAYMENT.** If I pay off early, I will not be entitled to a refund of the prepaid finance charges, and I may have to pay a minimum finance charge.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

I read and was given a completed copy of this Disclosure Statement on May 17, 2003, prior to signing the Note or Change in Terms Agreement.

**BORROWER:**

x _Joan G. Shelledy Johnson_
JOAN G SHELLEDY–JOHNSON, Individually

---

### Amount Financed Itemization

| | | |
|---|---|---|
| Other Disbursements:<br>$127,121.54 Modification | | $127,121.54 |
| Note Principal: | | $127,121.54 |
| Prepaid Finance Charges: | | $103.00 |
| In Cash:<br>$95.00 Documentation Preparation Fee<br>$8.00 Credit Report Fee | $103.00 | |
| Amount Financed: | | $127,018.54 |

LASER PRO Lending, Ver. 5.21.70.002 Copr. Harland Financial Solutions, Inc. 1997, 2003. All Rights Reserved.  – WA  C:\APPS\HARLAND\CFI\LPL\B10.FC  TR-124  PR-CONSMULT

Exhibit 4, p. 2 of 4

# DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $127,121.54 | 05-17-2003 | 11-18-2003 | 1018017028 | 2600 | 0000104024-01 | 206 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** JACK I JOHNSON
JOAN G SHELLEDY-JOHNSON
6801 BAYVIEW DR NW
MARYSVILLE, WA 98271

**Lender:** Viking Bank
registered trade name of Viking Community Bank
2237 Northwest 57th Street
P.O. Box 70546
Seattle, WA 98107

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 7.636% | $4,863.09 | $127,018.54 | $131,881.63 |

**PAYMENT SCHEDULE.** Borrower's payment schedule will be one interest payment of $30.91 on May 18, 2003; one interest payment of $958.20 on June 18, 2003; one interest payment of $927.29 on July 18, 2003; one interest payment of $958.20 on August 18, 2003; one interest payment of $958.20 on September 18, 2003; one interest payment of $927.29 on October 18, 2003; and one principal and interest payment of $127,121.54 on November 18, 2003.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in my motoryacht. In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.**

**PREPAYMENT.** If I pay off early, I will not be entitled to a refund of the prepaid finance charges, and I may have to pay a minimum finance charge.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

**I read and was given a completed copy of this Disclosure Statement on May 17, 2003, prior to signing the Note or Change in Terms Agreement.**

**BORROWER:**

X ______________________
JACK I JOHNSON, Individually

## Amount Financed Itemization

| | | |
|---|---|---|
| **Other Disbursements:** | | $127,121.54 |
| $127,121.54 Modification | | |
| **Note Principal:** | | $127,121.54 |
| **Prepaid Finance Charges:** | | $103.00 |
| In Cash: | $103.00 | |
| $95.00 Documentation Preparation Fee | | |
| $8.00 Credit Report Fee | | |
| **Amount Financed:** | | $127,018.54 |

LASER PRO Lending, Ver. 5.21.70.002 Copr. Harland Financial Solutions, Inc. 1997, 2003. All Rights Reserved. - WA C:\APPS\HARLAND\CFI\LPL\B10.FC TR-124 PR-CONSMULT

Loan # <u>1018017028</u>

# CHANGE IN TERMS AGREEMENT

**THIS AGREEMENT** dated November 18, 2003, is between Viking Bank ("Lender") and Jack I. Johnson and Joan G. Shelledy-Johnson ("Borrower").

**WHEREAS,** the Borrower previously delivered to Lender a promissory note dated November 18, 1998, which originally had a principal amount of $140,575.75; Together with a Change In Terms Agreement dated May 17, 2003. The Borrower has requested that Lender change the interest rate, payment schedule under that Note. Lender has agreed to change the interest rate, payment schedule but on certain terms and conditions.

**NOW, THEREFORE,** based on the terms and conditions herein, and in the promissory note or other loan documents previously executed by the Borrower, the parties agree as follows:

**CHANGE IN TERMS.** Lender hereby extends the current maturity date under the promissory note to <u>November 18, 2004</u>. Lender herby amends the payment schedule to change from interest only to principal and interest payments. The new payment schedule consists of eleven (11) separate payments of $1,028.34 due monthly beginning December 18, 2003, and continuing on the 18th each month after that, and one balloon payment of all remaining principal and interest not yet paid. All remaining principal and accrued unpaid interest shall be due in full on November 18, 2004.

Lender hereby modifies the interest rate from 8.875% per annum to 7.55% per annum.

**NO OTHER CHANGE OR MODIFICATION.** Except for the change in terms referenced above, no other terms, conditions, or covenants are changed, modified, or affected by this Agreement. Lender expressly reserves the right to accelerate the debt or obligation due Lender, or otherwise declare the Borrower to be in default, as provided for in the promissory note and other documents, upon any basis or grounds other than non-payment of the note by the maturity date which is now being extended. Lender has agreed to this Change in Terms Agreement on the condition that such Agreement does not impair, affect, or prejudice any of its legal rights, including but not limited to any lien, security interest, mortgage, deed of trust, or rights against guarantors. If such rights would be or are affected in any way by this Change in Terms Agreement, then this Agreement shall be deemed null, void, and of no effect.

**CHARGES PAID IN CASH.** Borrower has paid or will pay in cash as agreed the following charges:

| | |
|---|---|
| Documentation Preparation Fee | $ 85.00 |
| Loan Fee | $ 500.00 |
| Credit Report | $16.00 |
| Interest due to 12/1/03 on Loan #1018017028 | <u>$ 401.82</u> |
| Total charges paid in cash | $ 1,002.82 |

1

Exhibit 5, p. 1 of 2

ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR, TO FOREBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON STATE LAW.

**VIKING BANK**

By: ~~Tobey Wilkins~~ *Oyvind Kleven*
Title: Relationship Manager

**BORROWER:**
Jack I. Johnson & Joan G. Shelledy-Johnson

By: Jack I. Johnson, Individually

By: Joanne G. Shelledy-Johnson, Individually

2

# ( ANGE IN TERMS AGREEM' 'T

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $126,733.00 | 11-18-2004 | 12-18-2007 | 1018017028 | 2500 | 0000104024-01 | 206 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Jack I. Johnson
Joan G. Shelledy-Johnson
6804 Bayview Dr. NW
Tulalip, WA  98271

**Lender:** Viking Bank,
registered trade name of Viking Community Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA  98107

**Principal Amount: $126,733.00**                                                                **Date of Agreement: November 18, 2004**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** That certain Promissory Note dated November 18, 1998 from Borrower to Lender in the original principal amount of $140,575.75; amended by those certain Change in Terms Agreements dated May 17, 2003 and November 18, 2003.

**DESCRIPTION OF COLLATERAL.** Pleasure boat, 1967 53' Pacemaker Motoryacht "Perfect Union", Official Number 510731 evidenced by that certain Perferred Marine Mortgage recorded on November 23, 1998, Book 98-110 Page 626 .

**DESCRIPTION OF CHANGE IN TERMS.** The loan amount is increased to a total loan of $126,733.00 as further described below in paragraph titled "PROMISE TO PAY". The payment schedule is hereby amended as further described below in paragraph titled "PAYMENT". The Interest Rate is hereby amended as further described below in paragraph titled "VARIABLE RATE".

**PROMISE TO PAY. I ("Borrower") jointly and severally promise to pay to Viking Bank,**
registered trade name of Viking Community Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Twenty-six Thousand Seven Hundred Thirty-three & 00/100 Dollars ($126,733.00), together with interest on the unpaid principal balance from November 18, 2004, until paid in full. The interest rate will not increase above 24.000%.

**PAYMENT.** Subject to any payment changes resulting from changes in the index, I will pay this loan in accordance with the following payment schedule: 12 monthly consecutive principal and interest payments in the initial amount of $1,149.90 each, beginning December 18, 2004, with interest calculated on the unpaid principal balances at an initial discounted interest rate of 7.150% per annum; 24 monthly consecutive principal and interest payments in the initial amount of $1,172.94 each, beginning December 18, 2005, with interest calculated on the unpaid principal balances at an interest rate based on the 12 month Federal Home Loan Bank of Seattle Index (currently 2.990%), plus a margin of 4.500%, resulting in an initial interest rate of 7.490%; and one principal and interest payment of $111,872.26 on December 18, 2007, with interest calculated on the unpaid principal balances at an interest rate based on the 12 month Federal Home Loan Bank of Seattle Index (currently 2.990%), plus a margin of 4.500%, resulting in an initial interest rate of 7.490%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Agreement. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Agreement is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** For the first 12 payments, the interest rate on this Note will be 7.150%. Thereafter, the interest rate on this Agreement is subject to change from time to time based on changes in an independent index which is the 12 month Federal Home Loan Bank of Seattle Index (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to me. Lender will tell me the current index rate upon my request. The interest rate change will not occur more often than each 12 months based on the last business day of the prior month's fixed rate. I understand that Lender may make loans based on other rates as well. The Index currently is 2.990% per annum. The interest rate or rates to be applied to the unpaid principal balance of the Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Agreement, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. Notwithstanding the foregoing, the variable interest rate or rates provided for in the Note will be subject to the following minimum and maximum rates. NOTICE: Under no circumstances will the interest rate on the Note be less than 6.500% per annum or more than (except for any higher default rate shown below) the lesser of 24.000% per annum or the maximum rate allowed by applicable law. Unless waived by Lender, any increase in the interest rate will increase the amounts of my payments.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  In any event, even upon full prepayment of this Agreement, I understand that Lender is entitled to a minimum interest charge of $15.00. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language.  If I send such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Viking Bank,
registered trade name of Viking Community Bank; Ballard Office; 2237 Northwest 57th Street; P. O. Box 70546; Seattle, WA  98107.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Agreement to 24.000% per annum. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** I will be in default under this Agreement if any of the following happen:

   **Payment Default.** I fail to make any payment when due under the Indebtedness.

   **Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

   **False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

   **Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

   **Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

   **Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

   **Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

   **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

   **Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if I, after receiving written notice from Lender demanding cure of such default: (1)  cure the default within fifteen (15) days; or  (2)  if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

Exhibit __, p. 1 of 4

Loan No: 1018017028

# CHANGE IN TERMS AGREEMENT
## (Continued)

Page 2

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Agreement and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Washington without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Washington.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of King County, State of Washington.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $50.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** I acknowledge this Agreement is secured by Pleasure boat, 1967 53' Pacemaker Motoryacht "Perfect Union", Official Number 510731 evidenced by that certain Perferred Marine Mortgage recorded on November 23, 1998, Book 98-110 page 626 .

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ERRORS AND OMISSIONS.** In the event any of the documents evidencing and/or securing the Loan misstate or inaccurately reflect the true and correct terms and provisions of the Loan and said misstatement or inaccuracy is due to the unilateral mistake on the part of the Lender, mutual mistake on the part of Lender and Borrower, or clerical error or any such documents need additional signatures by Borrower, or additional documents are needed to confirm or perfect Lender's rights or Borrower's obligations, then in such event Borrower shall immediately upon request by Lender execute such documents or initial such corrected original documents as Lender may deem necessary and Borrower's failure to initial or execute such documents as requested shall constitute a Default under the Loan evidencing the Deed of trust and/or Security Agreement securing the Loan.

**PRIOR NOTE.** That certain Promissory Note dated November 18, 1998 from Borrower to Lender in the original principal amount of $140,575.76; amended by those certain Change In Terms Agreements dated May 17, 2003 and November 18, 2003.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than me, Lender, without notice to me, may deal with my successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing me from the obligations of this Agreement or liability under the indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Viking Bank P. O. Box 70546 2244 Northwest 56th Street Seattle, WA 98107.

**MISCELLANEOUS PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. I and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**PRIOR TO SIGNING THIS AGREEMENT, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS AND THE NOTICE TO COSIGNER SET FORTH BELOW. I, AND EACH OF US, AGREE TO THE TERMS OF THE AGREEMENT.**

**CHANGE IN TERMS SIGNERS:**

X _(signature)_
Jack I. Johnson

_(signature)_ Joan G. Shelledy-Johnson

---

## NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Lender can collect this debt from you without first trying to collect from the borrower. The Lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

This notice is not the contract that makes you liable for the debt.

LASER PRO Lending, Ver. 5.25.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2004. All Rights Reserved. - WA C:\APPS\HARLAND\CFI\LPL\D20C.FC TR-1282 PR-19

Exhibit 4, p. 1 of 4

# DISCLOSURE STATEMENT

| Principal<br>$126,733.00 | Loan Date<br>11-18-2004 | Maturity<br>12-18-2007 | Loan No<br>1018017028 | Call / Coll<br>2500 | Account<br>0000104024-01 | Officer<br>205 | Initials |
|---|---|---|---|---|---|---|---|

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**   Jack I. Johnson
Joan G. Shelledy–Johnson
6804 Bayview Dr. NW
Tulalip, WA  98271

**Lender:**   Viking Bank,
registered trade name of Viking Community Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA  98107

| ANNUAL<br>PERCENTAGE RATE<br>The cost of my credit as a<br>yearly rate. | FINANCE CHARGE<br>The dollar amount the credit<br>will cost me. | Amount Financed<br>The amount of credit provided<br>to me or on my behalf. | Total of Payments<br>The amount I will have paid<br>after I have made all payments<br>as scheduled. |
|---|---|---|---|
| 7.840% | $28,649.62 | $125,172.00 | $153,821.62 |

**PAYMENT SCHEDULE.** Borrower's payment schedule will be 12 monthly payments in the initial amount of $1,149.90 each, beginning December 18, 2004; 24 monthly payments in the initial amount of $1,172.94 each, beginning December 18, 2005; and one payment of $111,872.26 on December 18, 2007.

**VARIABLE RATE FEATURE.** The annual percentage rate may increase during the term of the transaction if the rate increases on the 12 month Federal Home Loan Bank of Seattle Index.  The interest rate will not increase above 24.000%.  The rate will not increase more often than every 12 months based on the last business day of the prior month's fixed rate.  Any increase will take the form of higher payment amounts.

**EXAMPLE OF EFFECT OF INTEREST RATE INCREASE.**  If the interest rate increased by 0.250% on November 18, 2005, my regular payments would increase to $1,198.18.

**PROPERTY INSURANCE.**  I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.**  I am giving a security interest in my pleasure boat .  In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**LATE CHARGE.**  If a payment is 10 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.**

**PREPAYMENT.**  If I pay off early, I will not be entitled to a refund of the prepaid finance charges, and I may have to pay a minimum finance charge.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

I read and was given a completed copy of this Disclosure Statement on November 18, 2004, prior to signing the Note or Change in Terms Agreement.

BORROWER:

X _____
Jack I. Johnson

## Amount Financed Itemization

| | |
|---|---|
| **Amount paid to Borrower directly:**<br>$811.87 Lender's Check # Cashiers Check # _____ | $811.87 |
| **Amount paid on Borrower's account:**<br>$124,360.13 Payment on Loan # Principal Balance | $124,360.13 |
| **Total Financed Prepaid Finance Charges:** | $1,561.00 |
| **Note Principal:** | $126,733.00 |
| **Prepaid Finance Charges:**<br>Lender may retain a portion of certain of these amounts. | $1,561.00 |
|     Financed:                $1,561.00<br>    $1,250.00  Loan Fee<br>    $95.00  Documentation Preparation Fee<br>    $200.00     Amended   Preferred   Marine<br>    Mortgage<br>    $16.00  Credit Report–2 | |
| **Amount Financed:** | $125,172.00 |
| **Other Charges Paid in Cash:**<br>$591.64  Interest due to 11/18/04 on loan no. 1018017028 | $591.64 |

LASER PRO Lending, Ver. 5.25.00.005  Copr. Harland Financial Solutions, Inc. 1997, 2004.  All Rights Reserved.  - WA  C:\APPS\HARLAND\CFI\LPL\G19.FC  TR-1282  PR-18

Exhibit 6  p. 1 of 4

# DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $126,733.00 | 11-18-2004 | 12-18-2007 | 1018017028 | 2500 | 0000104024-02 | 206 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**   Jack I. Johnson
Joan G. Shelledy–Johnson
6804 Bayview Dr. NW
Tulalip, WA 98271

**Lender:**   Viking Bank,
registered trade name of Viking Community Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA 98107

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| **7.840%** | **$28,649.62** | **$125,172.00** | **$153,821.62** |

**PAYMENT SCHEDULE.** Borrower's payment schedule will be 12 monthly payments in the initial amount of $1,149.90 each, beginning December 18, 2004; 24 monthly payments in the initial amount of $1,172.94 each, beginning December 18, 2005; and one payment of $111,872.26 on December 18, 2007.

**VARIABLE RATE FEATURE.** The annual percentage rate may increase during the term of the transaction if the rate increases on the 12 month Federal Home Loan Bank of Seattle Index. The interest rate will not increase above 24.000%. The rate will not increase more often than every 12 months based on the last business day of the prior month's fixed rate. Any increase will take the form of higher payment amounts.

**EXAMPLE OF EFFECT OF INTEREST RATE INCREASE.** If the interest rate increased by 0.250% on November 18, 2005, my regular payments would increase to $1,198.18.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in my pleasure boat . In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.**

**PREPAYMENT.** If I pay off early, I will not be entitled to a refund of the prepaid finance charges, and I may have to pay a minimum finance charge.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

I read and was given a completed copy of this Disclosure Statement on November 18, 2004, prior to signing the Note or Change in Terms Agreement.

**BORROWER:**

x _Joan Shelledy–Johnson_
Joan G. Shelledy–Johnson

---

## Amount Financed Itemization

| | |
|---|---|
| **Amount paid to Borrower directly:** | $811.87 |
| $811.87 Lender's Check # Cashiers Check # _____ | |
| **Amount paid on Borrower's account:** | $124,360.13 |
| $124,360.13 Payment on Loan # Principal Balance | |
| **Total Financed Prepaid Finance Charges:** | $1,561.00 |
| | |
| **Note Principal:** | $126,733.00 |
| | |
| **Prepaid Finance Charges:** | $1,561.00 |
| Lender may retain a portion of certain of these amounts. | |
| Financed: $1,561.00 | |
| $1,250.00  Loan Fee | |
| $95.00  Documentation Preparation Fee | |
| $200.00    Amended  Preferred  Marine Mortgage | |
| $16.00  Credit Report–2 | |
| **Amount Financed:** | $125,172.00 |
| | |
| **Other Charges Paid in Cash:** | $591.64 |
| $591.64  Interest due to 11/18/04 on loan no. 1018017028 | |

LASER PRO Lending, Ver. 5.25.00.005  Copr. Harland Financial Solutions, Inc. 1997, 2004.  All Rights Reserved.  – WA  C:\APPS\HARLAND\CFI\LPL\I310 2C  TR-1282  PR-18

Exhibit Y, p. 4 of 4

## AMENDMENT TO PREFERRED MORTGAGE

Mortgagor:    Jack I. Johnson and Joan Shelledy-Johnson; Joint Tenants With Right of Survivorship; 100%
6804 Bayview Drive NW
Marysville, WA 98271

Mortgagee:    Viking Community Bank; 100%
2237 NW 57th
Seattle, WA  98107

Covering the whole of the vessel PERFECT UNION, Official Number 510731

Whereas, a certain Preferred Mortgage on the vessel PERFECT UNION, Official Number 510731, was recorded at the Vessel Documentation Office at Falling Waters, West Virginia, on November 18, 1998, at 10:27am, in Book No. 98-110, Instrument No. 626, it is agreed by both the above mentioned mortgagor and mortgagee that the amount of the Preferred Mortgage be changed from One Hundred Forty Thousand Five Hundred Seventy Five and 75/100, ($140,575.75) dollars to One Hundred Twenty Six Thousand Seven Hundred Thirty Three and 00/100, ($126,733.00) dollars; and it is also agreed that a copy of a certain promissory note attached to the existing Preferred Mortgage be replaced with a copy of a new promissory note, which is attached to this instrument.

It is further agreed, that the mortgage herein described remains in all aspects a valid and subsisting undertaking by the undersigned parties.

Date: 12/18/04

Mortgagor:

Jack I. Johnson

Joan Shelledy-Johnson

Date: 12/18/04

Mortgagee:

### ACKNOWLEDGMENT - MORTGAGOR

STATE OF __K__
COUNTY OF __

Be it known that before me appeared Jack I. Johnson and Joan Shelledy-Johnson, to me known to be the individuals described in and who executed this instrument and acknowledged that [he/she] signed the same as the free and voluntary act and deed for the uses and purposes therein mentioned.

In witness whereof, I have hereunto set my hand this ____ day of __Dec__    200_

Notary Public in and for the State of __WASH__    residing at __Seattle__

My commission expires: __4/7/06__

### ACKNOWLEDGEMENT - MORTGAGEE

STATE OF __Washington__
COUNTY OF __K__

I certify that I know or have satisfactory evidence that __Oyvian Kleven__    is the person who appeared before me, and said person acknowledged it as the __Senior V.P.__ of Viking Community Bank, to be the free and voluntary act of such party for the uses and purposes mentioned in this instrument.

In testimony whereof, I have hereunto set my hand and seal this __1st__ day of __Dec__    2004

Notary Public in and for the State of __Wash__
residing at __Seattle__
My commission expires: __4/7/06__

Exhibit 7, p. 1 of 1

# CHAN E IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $125,943.16 | 04-18-2005 | 12-18-2007 | 1018017028 | 3200 | 0000104024-02 | 206 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Jack I. Johnson
Joan G. Shelledy–Johnson
6804 Bayview Dr. NW
Tulalip, WA  98271

**Lender:**  Viking Bank,
registered trade name of Viking Community Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA  98107

---

**Principal Amount: $125,943.16**                              Date of Agreement: April 18, 2005

**DESCRIPTION OF EXISTING INDEBTEDNESS.** That certain Promissory Note dated November 18, 1998 from Borrower to Lender in the original principal amount of $140,575.75; amended by those certain Change In Terms Agreements dated May 17, 2003, November 18, 2003 and November 18, 2004.

**DESCRIPTION OF COLLATERAL.** Pleasure boat, 1967 53' Pacemaker Motoryacht "Perfect Union, Official Number 510731 evidenced by that certain Preferred Marine Mortgage recorded on November 23, 998, Book 98–1/10–Page 626.

**DESCRIPTION OF CHANGE IN TERMS.** We are deferring 3 months of payments and the payment schedule is hereby amended as further described below in paragraph titled "PAYMENT" .   Real property is being added to this loan as further described below in the paragraph titled "COLLATERAL". All other terms and conditions remain unchanged.

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to Viking Bank,
registered trade name of Viking Community Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Twenty–five Thousand Nine Hundred Forty–three & 16/100 Dollars ($125,943.16), together with interest on the unpaid principal balance from April 22, 2005, until paid in full. The interest rate will not increase above 24.000%.

**PAYMENT.** Subject to any payment changes resulting from changes in the index, I will pay this loan in accordance with the following payment schedule:  6 monthly consecutive principal and interest payments in the initial amount of $1,148.87 each, beginning June 18, 2005, with interest calculated on the unpaid principal balances at an initial discounted interest rate of 7.150% per annum; 24 monthly consecutive principal and interest payments in the initial amount of $1,266.88 each, beginning December 18, 2005, with interest calculated on the unpaid principal balances at an interest rate based on the 12 month Federal Home Loan Bank of Seattle Index (currently 3.810%), plus a margin of 5.000%, resulting in an initial interest rate of 8.810%; and one principal and interest payment of $115,762.08 on December 18, 2007, with interest calculated on the unpaid principal balances at an interest rate based on the 12 month Federal Home Loan Bank of Seattle Index (currently 3.810%), plus a margin of 5.000%, resulting in an initial interest rate of 8.810%.  This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Agreement.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs.  Interest on this Agreement is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** For the first 6 payments, the interest rate on this Note will be 7.150%.  Thereafter, the interest rate on this Agreement is subject to change from time to time based on changes in an independent index which is the 12 month Federal Home Loan Bank of Seattle Index (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans.  If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to me.  Lender will tell me the current index rate upon my request. The interest rate change will not occur more often than each 12 months based on the last business day of the prior month's fixed rate.  I understand that Lender may make loans based on other rates as well. The Index currently is 3.810% per annum. The interest rate or rates to be applied to the unpaid principal balance of the Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Agreement, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just–ending payment stream.  Notwithstanding the foregoing, the variable interest rate or rates provided for in the Note will be subject to the following minimum and maximum rates. NOTICE: Under no circumstances will the interest rate on the Note be less than 6.500% per annum or more than the lesser of 24.000% per annum or the maximum rate allowed by applicable law. Unless waived by Lender, any increase in the interest rate will increase the amounts of my payments.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law.   In any event, even upon full prepayment of this Agreement, I understand that Lender is entitled to a minimum interest charge of $15.00.  Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language.  If I send such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Viking Bank, P. O. Box 80565, 5701 1st Avenue South Seattle, WA 98109.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Agreement to 24.000% per annum. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** I will be in default under this Agreement if any of the following happen:

**Payment Default.** I fail to make any payment when due under the Indebtedness.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.  In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which

Exhibit 8 p. 1 of 4

Loan No: 1018017028

# CHANGE IN TERMS AGREEMENT
## (Continued)

Page 2

Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Agreement and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Washington without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Washington.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of King County, State of Washington.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $50.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** I acknowledge this Agreement is secured by Pleasure boat, 1967 53' Pacemaker Motoryacht "Perfect Union, Official Number 510731 evidenced by that certain Preferred Marine Mortgage recorded on November 23, 998, Book 98–110–Page 626 and

Real property located at 6804 Bayview Drive NW as evidenced by that certain Deed of Trust dated April 18, 2005 from Jack I Johnson and Joan G. Shelledy–Johnson to Lender.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**PRIOR NOTE.** That certain Promissory Note dated November 18, 1998 from Borrwer to Lender in the original principal amount of $140,575.75; amended by those certain Change In Terms Agreements dated May 17, 2003, November 18, 2003 and November 18, 2004, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than me, Lender, without notice to me, may deal with my successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing me from the obligations of this Agreement or liability under the indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Viking Bank P. O. Box 70546 2244 Northwest 56th Street Seattle, WA 98107.

**MISCELLANEOUS PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. I and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS AGREEMENT, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS AND THE NOTICE TO COSIGNER SET FORTH BELOW. I, AND EACH OF US, AGREE TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

X _____
Jack I. Johnson

X _____
Joan G. Shelledy–Johnson

---

## NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Lender can collect this debt from you without first trying to collect from the borrower. The Lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

This notice is not the contract that makes you liable for the debt.

LASER PRO Lending, Ver. 5.25.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved. – WA C:\APPS\HARLAND\CFI\LPL\D20C.FC TR-1552 PR-20

Exhibit 8, p. 2 of 4

## DISCLOSURE STATEMENT

| Principal $125,943.16 | Loan Date 04-18-2005 | Maturity 12-18-2007 | Loan No 1018017028 | Call / Coll 3200 | Account 0000104024-02 | Officer 206 | Initials |
|---|---|---|---|---|---|---|---|

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Jack I. Johnson
Joan G. Shelledy–Johnson
6804 Bayview Dr. NW
Tulalip, WA 98271

**Lender:**  Viking Bank,
registered trade name of Viking Community Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA 98107

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 8.413% | $27,129.76 | $125,930.66 | $153,060.42 |

**PAYMENT SCHEDULE.** Borrower's payment schedule will be 6 monthly payments in the initial amount of $1,148.87 each, beginning June 18, 2005; 24 monthly payments in the initial amount of $1,266.88 each, beginning December 18, 2005; and one payment of $115,762.08 on December 18, 2007.

**VARIABLE RATE FEATURE.** My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in my home. In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.**

**PREPAYMENT.** If I pay off early, I will not be entitled to a refund of the prepaid finance charges, and I may have to pay a minimum finance charge.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

I read and was given a completed copy of this Disclosure Statement on April 18, 2005, prior to signing the Note or Change in Terms Agreement.

**BORROWER:**

X  *Joan G. Shelledy Johnson*
Joan G. Shelledy–Johnson

### Amount Financed Itemization

| | | |
|---|---|---|
| **Amount paid on Borrower's account:** | | $125,943.16 |
| $125,943.16 Payment on Loan # 1018017028 (modification) | | |
| **Note Principal:** | | $125,943.16 |
| **Prepaid Finance Charges:** | | $12.50 |
| In Cash: | $12.50 | |
| $12.50  Flood Hazard Determination | | |
| **Amount Financed:** | | $125,930.66 |
| **Other Charges Paid In Cash:** | | $126.50 |
| $36.00  Recording Fees | | |
| $1.50  Credit Report (*Paid by Lender) | | |
| $89.00  Document Preparation | | |

LASER PRO Lending, Ver. 5.26.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved. – WA  C:\APPS\HARLAND\CFI\LPL\I810.FC  TR-1552  PR-20

# ᴅISCLOSURE STATEMENT

| Principal $125,943.16 | Loan Date 04-18-2005 | Maturity 12-18-2007 | Loan No 1018017028 | Call / Coll 3200 | Account 104024 | Officer 206 | Initials |
|---|---|---|---|---|---|---|---|

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Jack I. Johnson
Joan G. Shelledy–Johnson
6804 Bayview Dr. NW
Tulalip, WA 98271

**Lender:** Viking Bank,
registered trade name of Viking Community Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA 98107

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 8.413% | $27,129.76 | $125,930.66 | $153,060.42 |

**PAYMENT SCHEDULE.** Borrower's payment schedule will be 6 monthly payments in the initial amount of $1,148.87 each, beginning June 18, 2005; 24 monthly payments in the initial amount of $1,266.88 each, beginning December 18, 2005; and one payment of $115,762.08 on December 18, 2007.

**VARIABLE RATE FEATURE.** My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in my home. In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**PREPAYMENT.** If I pay off early, I will not be entitled to a refund of the prepaid finance charges, and I may have to pay a minimum finance charge.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

I read and was given a completed copy of this Disclosure Statement on April 18, 2005, prior to signing the Note or Change in Terms Agreement.

**BORROWER:**

X _____
Jack I. Johnson

## Amount Financed Itemization

| | | |
|---|---|---|
| **Amount paid on Borrower's account:** | | $125,943.16 |
| $125,943.16 Payment on Loan # 1018017028 (modification) | | |
| **Note Principal:** | | $125,943.16 |
| **Prepaid Finance Charges:** | | $12.50 |
| In Cash: | $12.50 | |
| $12.50 Flood Hazard Determination | | |
| **Amount Financed:** | | $125,930.66 |
| **Other Charges Paid In Cash:** | | $126.50 |
| $36.00 Recording Fees | | |
| $1.50 Credit Report (*Paid by Lender) | | |
| $89.00 Document Preparation | | |

LASER PRO Lending, Ver. 5.26.00.005  Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  – WA  C:\APPS\HARLAND\CFI\LPL\B10.FC  TR-1332  PR-20

Exhibit _8_, p. _4_ of _4_

# CH. NGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $116,411.32 | 12-18-2007 | 06-18-2008 | 1018017028 | 2500/3200 | 104024 | 206 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Jack I. Johnson
Joan G. Shelledy-Johnson
6804 Bayview Drive NW
Tulalip, WA 98271

**Lender:**  Viking Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA 98107

---

**Principal Amount: $116,411.32**                **Date of Agreement: December 18, 2007**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** That certain Promissory Note dated November 18, 1998 from Borrower to Lender in the original principal amount of $140,575.75, which was amended by those certain Change In Terms Agreements dated May 17, 2003, November 18, 2003, November 18, 2004 and April 18, 2005.

**DESCRIPTION OF COLLATERAL.** Preferred Mortgage of Vessel Perfect Union, Official Number 510731 as evidenced by that certain PMM dated November 18, 1998 from Jack I. Johnson and Joan Shelledy-Johnson to Lender which PMM was recorded on November 23, 1998 by the USCG in Book 98-110 and Page number 626, and further evidenced by that UCC-1 Financing Statement recorded in the records of the Secretary of State of Washington on November 20, 1998 as File Number 98-324-0457.

Real property located at 6804 Bayview Drive NW, Tulalip, WA 98271 as evidenced by that certain Deed of Trust dated April 18, 2005 from Jack I. Johnson and Joan G. Shelledy-Johnson to Lender which Deed of Trust was recorded in the records of Snohomish County, Washington on April 28, 2005 as Auditor's File Number 200504280836.

**DESCRIPTION OF CHANGE IN TERMS.** The maturity date of the Existing Indebtedness described above is hereby extended to June 18, 2008. All other terms and conditions remain unchanged.

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to Viking Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Sixteen Thousand Four Hundred Eleven & 32/100 Dollars ($116,411.32), together with interest on the unpaid principal balance from December 18, 2007, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, I will pay this loan in accordance with the following payment schedule: 5 monthly consecutive principal and interest payments in the initial amount of $1,396.10 each, beginning January 18, 2008, with interest calculated on the unpaid principal balances at an interest rate of 9.690% per annum; and one principal and interest payment of $115,030.90 on June 18, 2008, with interest calculated on the unpaid principal balances at an interest rate of 9.690% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts on this loan. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the 12 month Federal Home Loan Bank of Seattle Index (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying me. Lender will tell me the current Index rate upon my request. The interest rate change will not occur more often than each 12 months on the first payment anniversary date, based on the last business day of the prior month's fixed rate. I understand that Lender may make loans based on other rates as well. The Index currently is 4.330% per annum. The interest rate or rates to be applied to the unpaid principal balance during this loan will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Agreement, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this loan be less than 6.500% per annum or more than the lesser of 24.000% per annum or the maximum rate allowed by applicable law. Unless waived by Lender, any increase in the interest rate will increase the amounts of my payments.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Agreement, I understand that Lender is entitled to a minimum interest charge of $15.00. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance owed. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Viking Bank, P. O. Box 80565, 5701 1st Avenue South Seattle, WA 98108.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased to 24.000% per annum ("Default Rate"). If judgment is entered in connection with this Agreement, interest will continue to accrue after the date of judgment at the Default Rate. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** I will be in default under this Agreement if any of the following happen:

**Payment Default.** I fail to make any payment when due under the Indebtedness.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and

Exhibit 9 p. 1 of 4

Loan No: 1018017028

**CHANGE IN TERMS AGREEMENT**
**(Continued)**

Page 2

complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Washington without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Washington.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of King County, State of Washington.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $50.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** I acknowledge this Agreement is secured by Preferred Mortgage of Vessel Perfect Union, Official Number 510731 as evidenced by that certain PMM dated November 18, 1998 from Jack I. Johnson and Joan Shelledy-Johnson to Lender which PMM was recorded on November 23, 1998 by the USCG in Book 98-110 and Page number 626, and further evidenced by that UCC-1 Financing Statement recorded in the records of the Secretary of State of Washington on November 20, 1998 as File Number 98-324-0457.

Real property located at 6804 Bayview Drive NW, Tulalip, WA 98271 as evidenced by that certain Deed of Trust dated April 18, 2005 from Jack I. Johnson and Joan G. Shelledy-Johnson to Lender which Deed of Trust was recorded in the records of Snohomish County, Washington on April 28, 2005 as Auditor's File Number 200504280836

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ERRORS AND OMISSIONS.** In the event any of the documents evidencing and/or securing the Loan misstate or inaccurately reflect the true and correct terms and provisions of the Loan and said misstatement or inaccuracy is due to the unilateral mistake on the part of the Lender, mutual mistake on the part of Lender and Borrower, or clerical error or any such documents need additional signatures by Borrower, or additional documents are needed to confirm or perfect Lender's rights or Borrower's obligations, then in such event Borrower shall immediately upon request by Lender execute such documents or initial such corrected original documents as Lender may deem necessary and Borrower's failure to initial or execute such documents as requested shall constitute a Default under the Loan evidencing the Deed of trust and/or Security Agreement securing the Loan.

**PRIOR NOTE.** That certain Promissory Note dated November 18, 1998 from Borrower to Lender in the original principal amount of $140,575.75, which was amended by those certain Change In Terms Agreements dated May 17, 2003, November 18, 2003, November 18, 2004 and April 18, 2005.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than me, Lender, without notice to me, may deal with my successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing me from the obligations of this Agreement or liability under the indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Viking Bank P. O. Box 70546 2244 Northwest 56th Street Seattle, WA 98107.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. I and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**PRIOR TO SIGNING THIS AGREEMENT, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS AND THE NOTICE TO COSIGNER SET FORTH BELOW. I, AND EACH OF US, AGREE TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

X _____
Jack I. Johnson

X _____
Joan G. Shelledy-Johnson

## NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Lender can collect this debt from you without first trying to collect from the borrower. The Lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

This notice is not the contract that makes you liable for the debt.

LASER PRO Lending, Ver. 5.33.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - WA F:\HARLAND\CFI\LPL\D20C.FC TR-4356 PR-20

Exhibit 9, p. 2 of 4

# DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $116,411.32 | 12-18-2007 | 06-18-2008 | 1018017028 | | 104024 | 206 | |
| | | | | 2500/3200 | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Jack I. Johnson
Joan G. Shelledy-Johnson
6804 Bayview Drive NW
Tulalip, WA 98271

**Lender:** Viking Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA 98107

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of my credit as a yearly rate. | The dollar amount the credit will cost me. | The amount of credit provided to me or on my behalf. | The amount I will have paid after I have made all payments as scheduled. |
| 10.164% | $5,850.08 | $116,161.32 | $122,011.40 |

**PAYMENT SCHEDULE.** My payment schedule will be 5 monthly payments in the initial amount of $1,396.10 each, beginning January 18, 2008; and one payment of $115,030.90 on June 18, 2008.

**VARIABLE RATE FEATURE.** My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in my home. In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**PREPAYMENT.** If I pay off early, I will not be entitled to a refund of the prepaid finance charges, and I may have to pay a minimum finance charge.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

I read and was given a completed copy of this Disclosure Statement on December 18, 2007, prior to signing the Note or Change in Terms Agreement.

**BORROWER:**

X ______________________
Jack I. Johnson

## Amount Financed Itemization

| | | |
|---|---|---|
| **Other Disbursements:** | | $116,411.32 |
| $116,411.32 Outstanding balance as of 01-10-2008 | | |
| **Note Principal:** | | $116,411.32 |
| **Prepaid Finance Charges:** | | $250.00 |
| In Cash: | $250.00 | |
| $250.00 Loan Origination Fee | | |
| **Amount Financed:** | | $116,161.32 |
| **Other Charges Paid in Cash:** | | $1,594.10 |
| $198.00 Document Preparation | | |
| $1,396.10 January 18, 2008 Payment | | |

LASER PRO Lending, Ver 5.33.00.004 Copr. Harland Financial Solutions, Inc 1997, 2008 All Rights Reserved - WA F:\HARLAND\CFI\LPL\B10.FC TR-4366 PR-20

# DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $116,411.32 | 12-18-2007 | 06-18-2008 | 1018017028 | | 104024 | 206 | |
| | | | | 2500/3200 | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Jack I. Johnson
Joan G. Shelledy-Johnson
6804 Bayview Drive NW
Tulalip, WA 98271

**Lender:** Viking Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA 98107

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 10.164% | $5,850.08 | $116,161.32 | $122,011.40 |

**PAYMENT SCHEDULE.** My payment schedule will be 5 monthly payments in the initial amount of $1,396.10 each, beginning January 18, 2008; and one payment of $115,030.90 on June 18, 2008.

**VARIABLE RATE FEATURE.** My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in my home. In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**PREPAYMENT.** If I pay off early, I will not be entitled to a refund of the prepaid finance charges, and I may have to pay a minimum finance charge.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

I read and was given a completed copy of this Disclosure Statement on December 18, 2007, prior to signing the Note or Change in Terms Agreement.

**BORROWER:**

X Joan G. Shelledy-Johnson
Joan G. Shelledy-Johnson

## Amount Financed Itemization

| | | |
|---|---|---|
| **Other Disbursements:** | | $116,411.32 |
| $116,411.32 Outstanding balance as of 01-10-2008 | | |
| **Note Principal:** | | $116,411.32 |
| **Prepaid Finance Charges:** | | $250.00 |
| In Cash: | $250.00 | |
| $250.00 Loan Origination Fee | | |
| **Amount Financed:** | | $116,161.32 |
| **Other Charges Paid in Cash:** | | $1,594.10 |
| $198.00 Document Preparation | | |
| $1,396.10 January 18, 2008 Payment | | |

LASER PRO Lending, Ver. 5.33.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2008 All Rights Reserved. - WA F:\HARLAND\CFI\LPL\B10.FC TR-4365 PR-20

Exhibit 1, p. 4 of 4

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| 3,846.36 | 06-18-2008 | 09-18-2008 | 1018017028 | 2600 | 104024 | 206 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Jack I. Johnson
Joan G. Shelledy-Johnson
6804 Bayview Drive NW
Tulalip, WA 98271

**Lender:** Viking Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA 98107

**Principal Amount: $113,846.36**                    **Date of Agreement: June 18, 2008**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** That certain Promissory Note dated November 18, 1998 from Borrower to Lender in the original principal amount of $140,575.75, which was amended by those certain Change In Terms Agreements dated May 17, 2003, November 18, 2003, November 18, 2004, April 18, 2005 and December 18, 2007.

**DESCRIPTION OF COLLATERAL.** Real property located at 6804 Bayview Drive NW, Tulalip, WA 98271 as evidenced by that certain Deed of Trust dated April 18, 2005 from Jack I. Johnson and Joan G. Shelledy-Johnson to Lender which Deed of Trust was recorded in the records of Snohomish County, Washington on April 28, 2005 as Auditor's File Number 200504280836.

Preferred Mortgage of Vessel Perfect Union, Official Number 510731 as evidenced by that certain PMM dated November 18, 1998 from Jack I. Johnson and Joan Shelledy-Johnson to Lender which PMM was recorded on November 23, 1998 by the USCG in Book 98-110 and Page Number 626, and further evidenced by that UCC-1 Financing Statement recorded in the records of the Secretary of State of Washington on November 20, 1998 as File Number 98-324-0457.

**DESCRIPTION OF CHANGE IN TERMS.** The maturity date of the Existing Indebtedness described above is hereby extended to September 18, 2008. All other terms and conditions remain unchanged.

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to Viking Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Thirteen Thousand Eight Hundred Forty-six & 36/100 Dollars ($113,846.36), together with interest on the unpaid principal balance from June 18, 2008, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, I will pay this loan in accordance with the following payment schedule: 2 monthly consecutive principal and interest payments in the initial amount of $1,396.10 each, beginning July 18, 2008, with interest calculated on the unpaid principal balances at an interest rate of 9.690% per annum; and one principal and interest payment of $13,822.89 on September 18, 2008, with interest calculated on the unpaid principal balances at an interest rate of 9.690% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts on this loan. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the 12 month Federal Home Loan Bank of Seattle Index (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying me. Lender will tell me the current Index rate upon my request. The interest rate change will not occur more often than each 12 months on the first payment anniversary date, based on the last business day of the prior month's fixed rate. I understand that Lender may make loans based on other rates as well. The Index currently is 3.260% per annum. The interest rate or rates to be applied to the unpaid principal balance during the loan term will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Agreement, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this loan be less than 6.500% per annum or more than the lesser of 15.000% per annum or the maximum rate allowed by applicable law. Unless waived by Lender, any increase in the interest rate will increase the amounts of my payments.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Agreement, I understand that Lender is entitled to a minimum interest charge of $15.00. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Viking Bank, P. O. Box 80565, 5701 1st Avenue South Seattle, WA 98108.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased to 1.000% per annum ("Default Rate"). If judgment is entered in connection with this Agreement, interest will continue to accrue after the date of judgment at the Default Rate. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** I will be in default under this Agreement if any of the following happen:

**Payment Default.** I fail to make any payment when due under the Indebtedness.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then I will pay that amount.

Exhibit 10 p. 1 of 4

Loan No: 1018017028

## CHANGE IN TERMS AGREEMENT
### (Continued)

Pa...

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if I do not pay. I will pay Lender...amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not th...a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic st...injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender o...against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law...laws of the State of Washington without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the Sta...Washington.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of King County, Sta...Washington.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $50.00 if I make a payment on my loan and the check or preauthorized charge with w...I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (wh...checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the fu...However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I auth...Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such acco...and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in...paragraph.

**COLLATERAL.** I acknowledge this Agreement is secured by Real property located at 6804 Bayview Drive NW, Tulalip, WA 98271 as evide...by that certain Deed of Trust dated April 18, 2005 from Jack I. Johnson and Joan G. Shelledy-Johnson to Lender which Deed of Trust...recorded in the records of Snohomish County, Washington on April 28, 2005 as Auditor's File Number 200504280836.

Preferred Mortgage of Vessel Perfect Union, Official Number 510731 as evidenced by that certain PMM dated November 18, 1998 from Ja...Johnson and Joan G. Shelledy-Johnson to Lender which PMM was recorded on November 23, 1998 by the USCG in Book 98-110 and ...number 626, and further evidenced by that UCC-1 Financing Statement recorded in the records of the Secretary of State of Washingto...November 20, 1998 as File Number 98-324-0457.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, includin...agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement ...not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future changes in terms. Nor...in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers...endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any mak...endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obliga...does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on...representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be rele...by it. This waiver applies not only to any initial extension, modification or release, but also to all subsequent actions.

**ERRORS AND OMISSIONS.** In the event any of the documents evidencing and/or securing the Loan misstate or inaccurately reflect the tru...correct terms and provisions of the Loan and said misstatement or inaccuracy is due to the unilateral mistake on the part of the Lender, mu...mistake on the part of Lender and Borrower, or clerical error or any such documents need additional signatures by Borrower, or additi...documents are needed to confirm or perfect Lender's rights or Borrower's obligations, then in such event Borrower shall immediately ...request by Lender execute such documents or initial such corrected original documents as Lender may deem necessary and Borrower's failu...initial or execute such documents as requested shall constitute a Default under the Loan evidencing the Deed of trust and/or Security Agreer...securing the Loan.

**PRIOR NOTE.** That certain Promissory Note dated November 18, 1998 from Borrower to Lender in the original principal amoun...$140,575.75, which was amended by those certain Change in Terms Agreements dated May 17, 2003, November 18, 2003, November...2004, April 18, 2005 and December 18, 2007.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be bin...upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other...me, Lender, without notice to me, may deal with my successors with reference to this Agreement and the Indebtedness by way of forbear...or extension without releasing me from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccu...information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be se...us at the following address: Viking Bank P. O. Box 70546 2244 Northwest 56th Street Seattle, WA 98107.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Le...may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. I and any other person who si...guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. ...any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whethe...maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or ex...(repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lenc...security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone o...than the party with whom the modification is made. The obligations under this Agreement are joint and several. This means that the words...**"me"**, and **"my"** mean each and all of the persons signing below.

**PRIOR TO SIGNING THIS AGREEMENT, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEME...INCLUDING THE VARIABLE INTEREST RATE PROVISIONS AND THE NOTICE TO COSIGNER SET FORTH BELOW. I, AND EACH OF US, AG...TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

X _____
Jack I. Johnson

_____
Joan G. Shelledy-Johnson

---

### NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure...can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection c...which increase this amount.

The Lender can collect this debt from you without first trying to collect from the borrower. The Lender can use the same collection met...against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact...become a part of YOUR credit record.

This notice is not the contract that makes you liable for the debt.

LASER PRO Lending, Ver 5.39.00.008 Copr. Harland Financial Solutions, Inc 1997, 2008.   All Rights Reserved.   - WA  C:\APPS\HARLAND\CFI\LPL\D20C.FC  TR-4820  PR-20

Exhibit _0_, p. _2_ of _4_

## DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $113,846.36 | 06-18-2008 | 09-18-2008 | 1018017028 | 2600 | 104024 | 206 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Jack I. Johnson
Joan G. Shelledy-Johnson
6804 Bayview Drive NW
Tulalip, WA 98271

**Lender:** Viking Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA 98107

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 10.127% | $2,868.73 | $113,746.36 | $116,615.09 |

**PAYMENT SCHEDULE.** My payment schedule will be 2 monthly payments in the initial amount of $1,396.10 each, beginning July 18, 2008; and one payment of $113,822.89 on September 18, 2008.

**VARIABLE RATE FEATURE.** My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in my home located at 6804 Bayview Drive NW, Tulalip, WA 98271 and 1967 53' Pacemaker Motoryacht "Perfect Union" (Serial Number 510731). In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**PREPAYMENT.** If I pay off early, I will not be entitled to a refund of the prepaid finance charges, and I may have to pay a minimum finance charge.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

I read and was given a completed copy of this Disclosure Statement on June 18, 2008, prior to signing the Note or Change in Terms Agreement.

**BORROWER:**

X _____
Jack I. Johnson

### Amount Financed Itemization

| | | |
|---|---|---|
| Other Disbursements: | | $113,846.36 |
| $113,846.36 Outstanding Balance as of 7/1/08 | | |
| Note Principal: | | $113,846.36 |
| Prepaid Finance Charges: | | $100.00 |
| In Cash: | $100.00 | |
| $100.00 Loan Origination Fee ($) | | |
| Amount Financed: | | $113,746.36 |

LASER PRO Lending, Ver 5 39 00 008 Copr. Harland Financial Solutions, Inc 1997, 2008  All Rights Reserved  - WA  C:\APPS\HARLAND\CFN,PL\I810.FC  TR-4620  PR-20

Exhibit 10, p. 3 of 4

# DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $113,846.36 | 06-18-2008 | 09-18-2008 | 1018017028 | 2600 | 104024 | 206 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Jack I. Johnson
Joan G. Shelledy-Johnson
6804 Bayview Drive NW
Tulalip, WA 98271

**Lender:** Viking Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA 98107

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 10.127% | $2,868.73 | $113,746.36 | $116,615.09 |

**PAYMENT SCHEDULE.** My payment schedule will be 2 monthly payments in the initial amount of $1,396.10 each, beginning July 18, 2008; and one payment of $113,822.89 on September 18, 2008.

**VARIABLE RATE FEATURE.** My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in my home located at 6804 Bayview Drive NW, Tulalip, WA 98271 and 1967 53' Pacemaker Motoryacht "Perfect Union" (Serial Number 510731). In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**PREPAYMENT.** If I pay off early, I will not be entitled to a refund of the prepaid finance charges, and I may have to pay a minimum finance charge.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

I read and was given a completed copy of this Disclosure Statement on June 18, 2008, prior to signing the Note or Change in Terms Agreement.

BORROWER:

X ______________________
Joan G. Shelledy-Johnson

## Amount Financed Itemization

| | | |
|---|---|---|
| Other Disbursements: | | $113,846.36 |
| $113,846.36 Outstanding Balance as of 7/1/08 | | |
| Note Principal: | | $113,846.36 |
| Prepaid Finance Charges: | | $100.00 |
| In Cash: | $100.00 | |
| $100.00 Loan Origination Fee ($) | | |
| Amount Financed: | | $113,746.36 |

LASER PRO Lending, Ver. 5.39.00.009 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - WA C:\APPS\HARLAND\CFI\LPL\B10.FC TR-4920 PR-20

Exhibit 10 p. 4 of 4

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call/Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $110,911.44 | 09-18-2008 | 09-18-2009 | 1018017028 | 800 | 104024 | 206 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Jack I. Johnson
Joan G. Shellody-Johnson
6804 Bayview Drive Northwest
Tulalip, WA 98271

**Lender:**  Viking Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA 98107

---

**Principal Amount: $110,911.44**      **Interest Rate: 9.690%**      **Date of Agreement: September 18, 2008**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** That certain Promissory Note dated November 18, 1998 from Borrower to Lender in the original principal amount of $140,575.75, amended by those certain Change in Terms Agreements dated May 17, 2003, November 18, 2003, November 18, 2004, April 18, 2005, December 18, 2007 and June 18, 2008.

**DESCRIPTION OF COLLATERAL.** Real property located at 6804 Bayview Drive NW., Tulalip WA 98271 as evidenced by that certain Deed of Trust dated April 18, 2005 from Jack I. Johnson and Joan G. Shellody-Johnson to Lender which Deed of Trust was recorded in the records of Snohomish County, Washington on April 28, 2005 as Auditor's File Number 200504280836.

Preferred Mortgage of Vessel Perfect Union, Official Number 510731 as evidenced by that certain PMM dated November 18, 1998 from Jack I. Johnson and Joan Shellody-Johnson to Lender which PMM was recorded on November 23, 1998 by the USCG in Book 98-110 and Page Number 626, and further evidenced by that UCC-1 Financing Statement recorded in the records of the Secretary of State of Washington on November 20, 1998 as File Number 98-324-0457.

**DESCRIPTION OF CHANGE IN TERMS.** The maturity date of the Existing Indebtedness described above is hereby extended to September 18, 2009. The payment schedule is hereby amended as further described below in paragraph titled "PAYMENT". The Interest Rate is hereby amended as further described below in paragraph title "PROMISE TO PAY". All other terms and conditions remain unchanged.

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to Viking Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Ten Thousand Nine Hundred Eleven & 44/100 Dollars ($110,911.44), together with interest at the rate of 9.690% per annum on the unpaid principal balance from September 18, 2008, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in 11 regular payments of $1,400.00 each and one irregular last payment estimated at $105,980.46. My first payment is due October 18, 2008, and all subsequent payments are due on the same day of each month after that. My final payment will be due on September 18, 2009, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Agreement, I understand that Lender is entitled to a minimum interest charge of $15.00. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Viking Bank, P. O. Box 80565, 5701 1st Avenue South Seattle, WA 98108.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased to 24.000% per annum ("Default Rate"). If judgment is entered in connection with this Agreement, interest will continue to accrue after the date of judgment at the Default Rate. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** I will be in default under this Agreement if any of the following happen:

**Payment Default.** I fail to make any payment when due under the Indebtedness.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Washington without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Washington.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of King County, State of Washington.

Exhibit 11, p. 1 of 4

## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 1018017028                                                                 Page 2

DISHONORED ITEM FEE. I will pay a fee to Lender of $50.00 if I make a payment on my loan and the check or preauthorized charge with which pay is later dishonored.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

COLLATERAL. I acknowledge this Agreement is secured by Real property located at 6804 Bayview Drive NW., Tulalip WA 98271 as evidenced by that certain Deed of Trust dated April 18, 2005 from Jack I. Johnson and Joan G. Shellady-Johnson to Lender which Deed of Trust was recorded in the records of Snohomish County, Washington on April 28, 2005 as Auditor's File Number 200504230836.

Preferred Mortgage of Vessel Perfect Union, Official Number 510731 as evidenced by that certain PMM dated November 18, 1998 from Jack I. Johnson and Joan Shellady-Johnson to Lender which PMM was recorded on November 23, 1998 by the USCG in Book 98-110 and Page Number 625, and further evidenced by that UCC-1 Financing Statement recorded in the records of the Secretary of State of Washington on November 20, 1998 as File Number 98-324-0457.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

ERRORS AND OMISSIONS. In the event any of the documents evidencing and/or securing the Loan misstate or inaccurately reflect the true and correct terms and provisions of the Loan and said misstatement or inaccuracy is due to the unilateral mistake on the part of the Lender, mutual mistake on the part of Lender and Borrower, or clerical error or any such documents need additional signatures by Borrower, or additional documents are needed to confirm or perfect Lender's rights or Borrower's obligations, then in such event Borrower shall immediately upon request by Lender execute such documents or initial such corrected original documents as Lender may deem necessary and Borrower's failure to initial or execute such documents as requested shall constitute a Default under the Loan evidencing the Deed of trust and/or Security Agreement securing the Loan.

PRIOR NOTE. That certain Promissory Note dated November 18, 1998 from Borrower to Lender in the original principal amount of $140,575.75, amended by those certain Change in Terms Agreements dated May 17, 2003, November 18, 2003, November 18, 2004, April 18, 2005, December 18, 2007 and June 18, 2008.

SUCCESSORS AND ASSIGNS. Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than me, Lender, without notice to me, may deal with my successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing me from the obligations of this Agreement or liability under the Indebtedness.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Viking Bank P. O. Box 70546 2244 Northwest 56th Street Seattle, WA 98107.

MISCELLANEOUS PROVISIONS. If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. I and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS AGREEMENT, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT AND THE NOTICE TO COSIGNER SET FORTH BELOW. I, AND EACH OF US, AGREE TO THE TERMS OF THE AGREEMENT.

BORROWER:

x _____          x _____
Jack I. Johnson                     Joan G. Shellady-Johnson

### NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Lender can collect this debt from you without first trying to collect from the borrower. The Lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

This notice is not the contract that makes you liable for the debt.

LASER PRO Lending, Ver. 5.39.00.004 Copr. Harland Financial Solutions, Inc 1997, 2008. All Rights Reserved. - WA U:\PPTL\WLENDING\PL\D20C FC TR-L: 1 PR-COMMENT

# DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $110,911.44 | 09-18-2008 | 09-18-2009 | 1018017028 | 2500 | 104024 | 206 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Jack I. Johnson
Joan G. Shelledy-Johnson
6804 Bayview Drive Northwest
Tulalip, WA 98271

**Lender:** Viking Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA 98107

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 10.422% | $11,219.02 | $110,161.44 | $121,380.46 |

**PAYMENT SCHEDULE.** My payment schedule will be 11 monthly payments of $1,400.00 each, beginning October 18, 2008; and one payment of $105,980.46 on September 18, 2009.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in 1967 Pacemaker Motoryacht Perfect Union (Serial Number 510731), Real Property located at 6804 Bayview Drive Northwest, Tulalip, WA 98271. In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**PREPAYMENT.** If I pay off early, I will not be entitled to a refund of the prepaid finance charges, and I may have to pay a minimum finance charge.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

I read and was given a completed copy of this Disclosure Statement on September 18, 2008, prior to signing the Note or Change in Terms Agreement.

BORROWER:

X [signature]
Jack I. Johnson

## Amount Financed Itemization

| | | |
|---|---|---|
| **Amount paid to me directly:** | | $110,911.44 |
| $110,911.44 Deposited to Account # Outstanding Balance as of 10-30-2008 | | |
| **Note Principal:** | | $110,911.44 |
| **Prepaid Finance Charges:** | | $750.00 |
| In Cash: | $750.00 | |
| $750.00 Loan Fee | | |
| **Amount Financed:** | | $110,161.44 |
| **Other Charges Paid in Cash:** | | $1,550.00 |
| $150.00 Documentation Preparation Fee | | |
| $1,400.00 October 18, 2008 Payment on loan #1018017028 | | |

LASER PRO Lending, Ver. 5.39.00.008 Copr. Harland Financial Solutions, Inc. 1997, 2008 All Rights Reserved. - WA C:\APPS\HARLAND\CFI\LPL\B10.FC TR-5217 PR-CONSMULT

# DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $110,911.44 | 09-18-2008 | 09-18-2009 | 1018017028 | 2600 | 104024 | 206 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Jack I. Johnson
Joan G. Shelledy-Johnson
6804 Bayview Drive Northwest
Tulalip, WA 98271

**Lender:** Viking Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA 98107

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of my credit as a yearly rate. | The dollar amount the credit will cost me. | The amount of credit provided to me or on my behalf. | The amount I will have paid after I have made all payments as scheduled. |
| 10.422% | $11,219.02 | $110,161.44 | $121,380.46 |

**PAYMENT SCHEDULE.** My payment schedule will be 11 monthly payments of $1,400.00 each, beginning October 18, 2008; and one payment of $105,980.46 on September 18, 2009.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in 1967 Pacemaker Motoryacht Perfect Union (Serial Number 510731), Real Property located at 6804 Bayview Drive Northwest, Tulalip, WA 98271. In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**PREPAYMENT.** If I pay off early, I will not be entitled to a refund of the prepaid finance charges, and I may have to pay a minimum finance charge.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

**I read and was given a completed copy of this Disclosure Statement on September 18, 2008, prior to signing the Note or Change in Terms Agreement.**

**BORROWER:**

X Joan G. Shelledy-Johnson
Joan G. Shelledy-Johnson

## Amount Financed Itemization

| | | |
|---|---|---|
| **Amount paid to me directly:** | | $110,911.44 |
| $110,911.44 Deposited to Account # Outstanding Balance as of 10-30-2008 | | |
| **Note Principal:** | | $110,911.44 |
| **Prepaid Finance Charges:** | | $750.00 |
| In Cash: | $750.00 | |
| $750.00 Loan Fee | | |
| **Amount Financed:** | | $110,161.44 |

| | |
|---|---|
| **Other Charges Paid in Cash:** | $1,550.00 |
| $150.00 Documentation Preparation Fee | |
| $1,400.00 October 18, 2008 Payment on loan #1018017028 | |

LASER PRO Lending, Ver. 5.39.00.008 Copr. Harland Financial Solutions, Inc. 1997, 2008 All Rights Reserved. - WA C:\APPS\HARLAND\CFI\LPL\B10.FC TR-6217 PR-CONSMULT

## IANGE IN TERMS AGREEMI T

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $105,146.62 | 09-18-2009 | 09-18-2010 | 1018017028 | 3200/2600 | 104024 | 252 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** Jack I. Johnson
Joan G. Shellady-Johnson
6804 Bayview Drive Northwest
Tulalip, WA 98271

**Lender:** Viking Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA 98107

---

**Principal Amount: $105,146.62          Interest Rate: 9.690%          Date of Agreement: September 18, 2009**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** That certain Promissory Note dated November 18, 1998 from Borrower to Lender in the original principal amount of $140,575.75, amended by those certain Change in Terms Agreements dated May 17, 2003, November 18, 2003, November 14, 2004, April 18, 2005, December 18, 2007, June 16, 2008 and September 18, 2008.

**DESCRIPTION OF COLLATERAL.** Preferred Mortgage of Vessel Perfect Union, Official Number 510731 as evidenced by that certain PMM dated November 18, 1998 from Borrower to Lender which PMM was recorded on November 23, 1998 by the USCG in Book 98-110 and Page number 626, and further evidenced by that UCC-1 Financing Statement recorded in the records of the Secretary of State Washington on November 20, 1998 as File Number 98-324-0457.

Real property located at 6804 Bayview Drive NW., Tulalip, WA 98271 as evidenced by that certain Deed of Trust dated April 18, 2005 from Borrower to Lender which Deed of Trust was recorded in the records of Snohomish County, Washington on April 26, 2005 as Auditor's File Number 200504280836.

**DESCRIPTION OF CHANGE IN TERMS.** The maturity date of the Existing Indebtedness described above is hereby extended to September 18, 2010. All other terms and conditions remain unchanged.

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to Viking Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Five Thousand One Hundred Forty-six & 62/100 Dollars ($105,146.62), together with interest on the unpaid principal balance from September 18, 2009, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 9.690% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in 11 regular payments of $1,400.00 each and one irregular last payment estimated at $99,631.53. My first payment is due October 18, 2009, and all subsequent payments are due on the same day of each month after that. My final payment will be due on September 18, 2010, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Agreement, I understand that Lender is entitled to a minimum interest charge of $15.00. Other than my obligation to pay any minimum interest charge, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Viking Bank, P. O. Box 80565, 5701 1st Avenue South Seattle, WA 98108.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased to 24.000% per annum ("Default Rate"). If judgment is entered in connection with this Agreement, interest will continue to accrue after the date of judgment at the Default Rate. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** I will be in default under this Agreement if any of the following happen:

**Payment Default.** I fail to make any payment when due under the Indebtedness.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if I, after Lender sends written notice to me demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Washington without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of

Exhibit 12 p. 1 of 6

**CHANGE IN TERMS AGREEMENT**
**(Continued)**

Loan No: 1018017028                                                                 Page 2

Washington.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of King County, State of Washington.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $50.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** I acknowledge this Agreement is secured by Preferred Mortgage of Vessel Perfect Union, Official Number 510731 as evidenced by that certain PMM dated November 18, 1998 from Borrower to Lender which PMM was recorded on November 23, 1998 by the USCG in Book 98-110 and Page number 626, and further evidenced by that UCC-1 Financing Statement recorded in the records of the Secretary of State Washington on November 20, 1998 as File Number 98-324-0457.

Real property located at 6804 Bayview Drive NW., Tulalip, WA 98271 as evidenced by that certain Deed of Trust dated April 18, 2005 from Borrower to Lender which Deed of Trust was recorded in the records of Snohomish County, Washington on April 28, 2005 as Auditor's File Number 200504280836.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ERRORS AND OMISSIONS.** In the event any of the documents evidencing and/or securing the Loan misstate or inaccurately reflect the true and correct terms and provisions of the Loan and said misstatement or inaccuracy is due to the unilateral mistake on the part of the Lender, mutual mistake on the part of Lender and Borrower, or clerical error or any such documents need additional signatures by Borrower, or additional documents are needed to confirm or perfect Lender's rights or Borrower's obligations, then in such event Borrower shall immediately upon request by Lender execute such documents or initial such corrected original documents as Lender may deem necessary and Borrower's failure to initial or execute such documents as requested shall constitute a Default under the Loan evidencing the Deed of trust and/or Security Agreement securing the Loan.

**PRIOR NOTE.** That certain Promissory Note dated November 18, 1998 from Borrower to Lender in the original principal amount of $140,575.75, amended by those certain Change in Terms Agreements dated May 17, 2003, November 18, 2003, November 14, 2004, April 18, 2005, December 18, 2007, June 16, 2008 and September 18, 2008.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than me, Lender, without notice to me, may deal with my successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing me from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Viking Bank Loan Services PO Box 80565 Seattle, WA 98108.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. I and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**PRIOR TO SIGNING THIS AGREEMENT, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT AND THE NOTICE TO COSIGNER SET FORTH BELOW. I, AND EACH OF US, AGREE TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

X _____                            _____
Jack I. Johnson                                          Joan G. Shelledy-Johnson

---

**NOTICE TO COSIGNER**

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Lender can collect this debt from you without first trying to collect from the borrower. The Lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

This notice is not the contract that makes you liable for the debt.

LASER PRO Lending, Ver. 5.46.30.003 Copr. Harland Financial Solutions, Inc. 1997, 2009. All Rights Reserved. WA C:\APPS\HARLAND\CFI\LPL\D20C.FC TR-5225 PR-227

Exhibit 12 p. 2 of 6

## DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal $105,146.62 | Loan Date 09-18-2009 | Maturity 09-18-2010 | Loan No. 1018017028 | Call / Coll 3200/2500 | Account 104024 | Officer 252 | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Jack I. Johnson
Joan G. Shelledy-Johnson
6804 Bayview Drive Northwest
Tulalip, WA 98271

**Lender:** Viking Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA 98107

---

**LOAN TYPE.** This is a Fixed Rate (9.690%) Disclosable Loan to two individuals for $105,146.62 due on September 18, 2010. This is a secured renewal of the following described indebtedness: That certain Promissory Note dated November 18, 1998 from Borrower to Lender in the original principal amount of $140,575.75, amended by those certain Change in Terms Agreements dated May 17, 2003, November 18, 2003, November 14, 2004, April 18, 2005, December 18, 2007, June 18, 2008 and September 18, 2008.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☒ Personal, Family, or Household Purposes or Personal Investment.

☐ Business (Including Real Estate Investment).

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Extend loan maturity one year to allow boat to sell.

**FLOOD INSURANCE.** As reflected on Flood Map No. 0700-E dated 11-08-1999, for the community of Snohomish County, some of the property that will secure the loan is not located in an area that has been identified by the Director of the Federal Emergency Management Agency as an area having special flood hazards. Therefore, although flood insurance may be available for the property, no special flood hazard insurance protecting property not located in an area having special flood hazards is required by law for this loan at this time.

**DISBURSEMENT INSTRUCTIONS.** I understand that no loan proceeds will be disbursed until any notice of the right to cancel time period specified has expired and all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $105,146.62 as follows:

| | |
|---|---|
| Other Disbursements: | $105,146.62 |
| $105,146.62 Outstanding Balance | |
| | |
| Note Principal: | $105,146.62 |

**CHARGES PAID IN CASH.** I have paid or will pay in cash as agreed the following charges:

| | |
|---|---|
| Prepaid Finance Charges Paid in Cash: | $750.00 |
| $750.00 Loan Origination Fee | |
| Other Charges Paid in Cash: | $1,420.00 |
| $20.00 Credit Report | |
| $1,400.00 September Payment | |
| | |
| Total Charges Paid in Cash: | $2,170.00 |

**LIEN RELEASE FEES.** In addition to all other charges, I agree, to the extent not prohibited by law, to pay all governmental fees for release of Lender's security interests in collateral securing this loan. I will pay these fees at the time the lien or liens are released. The estimated amount of these future lien release fees is $500.00.

**TAX CONSEQUENCES.** I understand that Lender makes no representation or warranty whatsoever concerning the tax consequences of this loan, including the deductibility of interest, and that I should consult with my own tax advisor for guidance on this subject. I also agree that Lender shall not be liable in any manner whatsoever should the interest paid on the loan not be deductible.

**DOCUMENT PREPARATION.** In connection with this Loan, Lender has selected, prepared, drafted or completed certain instruments or documents which will affect my legal rights. Lender has done this solely for its own benefit and to protect its own interest in the transaction. I HAVE BEEN ADVISED BY LENDER THAT I SHOULD CONSULT WITH MY OWN LEGAL COUNSEL TO PROTECT MY INTERESTS AND TO ANSWER ANY QUESTIONS I MAY HAVE ABOUT THE INSTRUMENTS, DOCUMENTS OR THE TRANSACTION.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, I REPRESENT AND WARRANT TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN MY FINANCIAL CONDITION AS DISCLOSED IN MY MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED SEPTEMBER 18, 2009.

**BORROWER:**

X _____
Jack I. Johnson

X _____
Joan G. Shelledy-Johnson

---

## CREDIT INSURANCE DISCLOSURE

**VOLUNTARY CREDIT INSURANCE.** CREDIT LIFE INSURANCE, CREDIT DISABILITY INSURANCE AND INVOLUNTARY UNEMPLOYMENT INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT.

By signing below, I acknowledge that I am not obtaining credit insurance for this loan for one of the following reasons:
(A) I am not eligible for credit insurance;
(B) Credit insurance is not available from Lender; or
(C) If I am eligible and credit insurance is available from Lender, I do not want it.

Prior to signing this Credit Insurance Notice on September 18, 2009, I read and understood all of the provisions of this Disclosure.

Exhibit 12 p. 3 of 6

## OTICE OF FINAL AGREEME

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $105,146.62 | 09-18-2009 | 09-18-2010 | 1018017028 | 3200/2500 | 104024 | 252 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Jack I. Johnson
Joan G. Shelledy-Johnson
6804 Bayview Drive Northwest
Tulalip, WA 98271

**Lender:** Viking Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70646
Seattle, WA 98107

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

By signing this document each Party acknowledges receipt of the above notice. In addition (and not as a limitation on the legal effect of the notice), by signing this document each Party represents and agrees that: (a) The written Loan Agreement represents the final agreement between the Parties, (b) There are no unwritten oral agreements between the Parties, and (c) The written Loan Agreement may not be contradicted by evidence of any prior, contemporaneous, or subsequent oral agreements or understandings of the Parties.

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (9.690%) Disclosable Loan to two Individuals for $105,146.62 due on September 18, 2010. This is a secured renewal of the following described indebtedness. That certain Promissory Note dated November 18, 1998 from Borrower to Lender in the original principal amount of $140,575.75, amended by those certain Change in Terms Agreements dated May 17, 2003, November 18, 2003, November 14, 2004, April 13, 2005, December 18, 2007, June 18, 2008 and September 18, 2008.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

### LOAN DOCUMENTS

Amortization Schedule
Disclosure Statement: Joan G. Shelledy-Johnson
Negative Information Disclosure: Joan G. Shelledy-Johnson
WA Consumer Security Agreement: 1967 53' Pacemaker
Motoryacht Perfect Union (Serial Number 510731); owned by
Johnson and Shelledy-Johnson
Disbursement Request and Authorization
Notice of Final Agreement

Disclosure Statement: Jack I. Johnson
Negative Information Disclosure: Jack I. Johnson
Change in Terms Agreement
Power of Attorney: 1967 53' Pacemaker Motoryacht Perfect
Union (Serial Number 510731)
WA Deed of Trust for Real Property located at 6804 Bayview
Drive Northwest, Tulalip, WA 98271
Our promise of privacy to you: Jack I. Johnson and Joan G.
Shelledy-Johnson

**Parties.** The term "Parties" means Viking Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower:    Jack I. Johnson and Joan G. Shelledy-Johnson
Grantor(s):   Jack I. Johnson and Joan G. Shelledy-Johnson

Each Party who signs below, other than Viking Bank, acknowledges, represents, and warrants to Viking Bank that it has received, read and understood this Notice of Final Agreement. This Notice is dated September 18, 2009.

**BORROWER:**

x _____
Jack I. Johnson

x _____
Joan G. Shelledy-Johnson

**LENDER:**

**VIKING BANK**

x _____
Greg Swanson, Vice President

Exhibit 12 p. 4 of 6

# DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $105,146.62 | 09-18-2009 | 09-18-2010 | 1018017028 | 3200/2500 | 104024 | 252 | [handwritten initials] |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Jack I. Johnson
Joan G. Shelledy-Johnson
6804 Bayview Drive Northwest
Tulalip, WA 98271

**Lender:** Viking Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA 98107

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 10.465% | $10,634.91 | $104,396.62 | $115,031.53 |

**PAYMENT SCHEDULE.** My payment schedule will be 11 monthly payments of $1,400.00 each, beginning October 18, 2009; and one payment of $99,631.53 on September 18, 2010.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in my 1967 53' Pacemaker Motoryacht Perfect Union (Serial Number 510731) and Real Property located at 6804 Bayview Drive Northwest, Tulalip, WA 98271. In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**PREPAYMENT.** If I pay off early, I will not be entitled to a refund of the prepaid finance charges, and I may have to pay a minimum finance charge.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

**I read and was given a completed copy of this Disclosure Statement on September 18, 2009, prior to signing the Note or Change in Terms Agreement.**

BORROWER:

x [signature]
Joan G. Shelledy-Johnson

## Amount Financed Itemization

| | | |
|---|---|---|
| **Other Disbursements:** | | $105,146.62 |
| $105,146.62 Outstanding Balance | | |
| **Note Principal:** | | $105,146.62 |
| **Prepaid Finance Charges:** | | $750.00 |
| In Cash: | $750.00 | |
| $750.00 Loan Origination Fee | | |
| **Amount Financed:** | | $104,396.62 |
| **Other Charges Paid In Cash:** | | $1,420.00 |
| $20.00 Credit Report | | |
| $1,400.00 September Payment | | |

LASER PRO Lending, Ver. 5.48.00.002 Copr. Harland Financial Solutions, Inc. 1997, 2009. All Rights Reserved. - WA

# DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $105,146.62 | 09-18-2009 | 09-18-2010 | 1018017028 | 3200/2500 | 104024 | 252 | *(initials)* |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Jack I. Johnson
Joan G. Shelledy-Johnson
6804 Bayview Drive Northwest
Tulalip, WA 98271

**Lender:** Viking Bank
Ballard Office
2237 Northwest 57th Street
P. O. Box 70546
Seattle, WA 98107

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 10.465% | $10,634.91 | $104,396.62 | $115,031.53 |

**PAYMENT SCHEDULE.** My payment schedule will be 11 monthly payments of $1,400.00 each, beginning October 18, 2009; and one payment of $99,631.53 on September 18, 2010.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in my 1967 53' Pacemaker Motoryacht Perfect Union (Serial Number 510731) and Real Property located at 6804 Bayview Drive Northwest, Tulalip, WA 98271. In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**PREPAYMENT.** If I pay off early, I will not be entitled to a refund of the prepaid finance charges, and I may have to pay a minimum finance charge.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

**I read and was given a completed copy of this Disclosure Statement on September 18, 2009, prior to signing the Note or Change in Terms Agreement.**

BORROWER:

X *(signature)*
Jack I. Johnson

## Amount Financed Itemization

| | | |
|---|---|---|
| **Other Disbursements:** | | $105,146.62 |
| $105,146.62 Outstanding Balance | | |
| **Note Principal:** | | $105,146.62 |
| **Prepaid Finance Charges:** | | $750.00 |
| In Cash: | $750.00 | |
| $750.00 Loan Origination Fee | | |
| **Amount Financed:** | | $104,396.62 |
| **Other Charges Paid in Cash:** | | $1,420.00 |
| $20.00 Credit Report | | |
| $1,400.00 September Payment | | |

LASER PRO Lending, Ver. 5.48.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2009. All Rights Reserved. - WA C:\APPS\CFI\LPL\B10.FC TR-5970 PR-222